**In the Interest of K.M., a Minor Child,**

**R.M., Mother and R.M.,
Father, Appellants.**

No. 02–0319.

Supreme Court of Iowa.

Nov. 14, 2002.

Kevin E. Schoeberl of Story, Schoeberl & Kowalke Law Firm, Cresco, for appellants.

Thomas J. Miller, Attorney General and M. Elise Pippin, Assistant Attorney General, for appellee.

Mark B. Anderson of Cresco, guardian ad litem for minor child.

TERNUS, Justice.

The juvenile court terminated the parental rights of the biological parents of K.M. pursuant to Iowa Code section 232.116(1)(*f*) and (*i*) (Supp.2001). The Iowa Court of Appeals affirmed the termination order, finding clear and convincing evidence that the requirements of section 232.116(1)(*i*) were met. The court of appeals also rejected the parents' constitutional challenge to Iowa Code section 232.116(2). This court granted further review. Upon our examination and consideration of the record, we affirm. *See generally In re C.B.*, 611 N.W.2d 489, 492 (Iowa

2000) ("We review termination proceedings de novo.").

■ I. *Statutory requirements for termination.* Stated simply, the primary events leading to this proceeding were repeated incidents of sexual abuse over the past nine years committed against K.M. by her brother, half-brother, and a non-relative. The juvenile court and the court of appeals, in its de novo review, found that the requirements for termination under section 232.116(1)(*i*) were met. This statute allows termination upon the following findings:

(1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.

(3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

Iowa Code § 232.116(1)(*i*). The parents do not contest that the second element is met, but rather claim the first and third requirements were not established.

In support of their claim that termination under this statute is inappropriate, the parents point out there was no *adjudication* in the child-in-need-of-assistance (CINA) proceeding that K.M. had been sexually abused as a result of the acts or omissions of her parents. Although this contention is factually correct, it ignores the specific language of section 232.116(1)(*i*)(1). Subparagraph (1) does not require an *adjudication;* it merely requires a finding that "the child *meets the definition* of a child in need of assistance based upon a finding of . . . sexual abuse or neglect as a result of the acts or omissions of the . . . parent[s]." *Id.* § 232.116(1)(*i*)(1) (emphasis added); *cf. id.* § 232.116(1)(*d*) (requiring previous "adjudication"). Without lengthening this opinion with a recitation of the details, we merely observe that the record is replete with evidence supporting the conclusion that K.M. meets this definition.

The parents also assert that the third element of paragraph (*i*) was not met. They rely on the testimony of a therapist that the parents have corrected the conditions leading to the sexual abuse of K.M. and are now capable of protecting her from sexual predators. Notwithstanding this testimony, there is abundant evidence that suggests the services given to the parents have not remedied the conditions leading to K.M.'s sexual abuse. Although the parents have made some progress toward understanding and recognizing the nature of sexual abuse and sexual abusers, there are still serious concerns about the parents' capacity for change and continuing motivation to change. In addition, the record shows they continue to allow other children in their custody to be in risky and unsafe situations. We have no confidence that the parents have progressed to the point that they are capable of protecting K.M. from further sexual assaults. Therefore, we find that the prerequisites for termination of parental rights under section 232.116(1)(*i*) have been satisfied.

■ II. *Best interests of the child.* The parents contend that even if the requirements of section 232.116(1)(*i*) are met, termination is not in K.M.'s best interests. *See In re M.S.,* 519 N.W.2d 398, 400 (Iowa 1994) ("Even if the statutory requirements for termination are met, the decision to terminate must still be in the best interest of the children."). In consid-

ering whether to terminate the rights of a parent under section 232.116, the court must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In assessing these factors, we may look at the parents' ability to provide for the child, the child's integration into a foster family and the permanency of that situation, the length of time the child has lived in a stable and satisfactory environment and the desirability of maintaining that environment, the child's reasonable preference, and the foster parents' relevant testimony. *Id.* The court need not terminate parental rights if "[t]he child is over ten years of age and objects to the termination." *Id.* § 232.116(3)(*b*). Termination may also be rejected upon "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(*c*).

While K.M. is bonded to her parents, we are convinced her best interests require termination of her parents' parental rights. K.M. has been returned to her parents in the past only to be subjected to additional sexual abuse. Even though she has become more assertive, she continues to remain at risk of being revictimized if returned to her parents' care. As the juvenile court found, K.M. sees herself as caught in a "revolving door." She has now been in the same supportive foster home for a total of twenty-seven months, and during this time her hygiene, trustfulness, and academic performance have improved. The stability provided by this environment, as compared to her parents' nomadic lifestyle, is particularly important given her need for special education services. Importantly, her foster parents are able and willing to provide her with a per-

manent home and the support she needs. Although there was testimony that K.M. had at times expressed a desire to be reunited with her parents, there was also testimony that she had conflicting feelings about returning to their care. Noting that K.M. had never been directly asked her preference, the juvenile court wisely observed that she should not "be required to make a decision to choose between her biological parents and her potential adoptive parents."

We think it is in K.M.'s best interest to stop the "revolving door" that has characterized her life thus far; she deserves a safe and permanent home, one that can be achieved with any degree of certainty only if her parents' rights are terminated. Therefore, we conclude that any detriment K.M. will suffer as a result of the severance of the parental bonds is more than outweighed by the benefits that will accrue from her placement in a safe, stable, and supportive environment.

III. *Constitutionality of section 232.116(2).* The parents maintain that a recent amendment to section 232.116(2) violates their substantive and procedural due process rights. *See generally* 1998 Iowa Acts ch. 1190, § 23 (amending section 232.116(2)). That provision, with the new language emphasized, now states in pertinent part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the *child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the* physical, mental, and emotional condition and needs of the child . . . .

Iowa Code § 232.116(2) (emphasis added). The parents argue that the amendment "shift[s] the balance to the best interest of the child and recognizes that the child's

right to appropriate custodial care is superior to any constitutionally protected bond of the biological parent," thereby violating the Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV (stating that no State shall "deprive any person of life, liberty, or property without due process of law").

■ A. *Procedural due process.* "A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest." *Bowers v. Polk County Bd. of Supervisors,* 638 N.W.2d 682, 690 (Iowa 2002). A termination-of-parental-rights proceeding such as the one before us affects a parent's fundamental "liberty interest in the care, custody and control of her child." *In re C.M.,* 652 N.W.2d 204, 211 (Iowa 2002). Thus, the parents in this case are clearly entitled to procedural due process: notice and a meaningful opportunity to be heard. *See In re A.M.H.,* 516 N.W.2d 867, 870 (Iowa 1994) (recognizing parents' procedural due process rights in termination and CINA proceedings).

We think the parents' claim of a procedural due process violation based on the amendment to section 232.116(2) must fail, as there is no showing that this amendment infringes upon their notice of the proceedings or their opportunity to be heard. . The allegation that the statute places the child's interests above the fundamental rights of the parents simply does not implicate procedural due process.

■ B. *Substantive due process.* "Substantive due process 'forbids the government [from infringing] certain "fundamental" liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Bowers,* 638 N.W.2d at 694 (citation omitted). As we have already stated, the parents' fundamental liberty interest in the care, custody

and control of their children is affected in termination cases. *See In re C.M.,* 652 N.W.2d at 211.

■ Notwithstanding the admitted infringement of a fundamental right, a conclusion that there is a substantive due process violation is not automatic. That is because the Due Process Clause does not protect individuals from all governmental actions that infringe their liberty interests. *Blumenthal Inv. Trusts v. City of West Des Moines,* 636 N.W.2d 255, 265 (Iowa 2001). " 'Rather, substantive due process is reserved for the most egregious governmental . . . abuses that "shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity." ' " *Id.* (citation omitted). Thus, the question in the present case is whether the infringement of the parents' fundamental rights is narrowly tailored to serve a compelling state interest or whether the infringement shocks the conscience or otherwise offends judicial concepts of fairness and human dignity.

■ Normally, there is no justification for the State's interference in the private relations of a family or for the State's examination of the judgment of parents in making decisions concerning the well being of their children. *Troxel v. Granville,* 530 U.S. 57, 68–69, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49, 58 (2000). That is because "a parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " *Lassiter v. Dep't of Social Servs.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640, 649–50 (1981) (quoting *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972)). Thus, "the Due Process Clause would be offended '[i]f

a State were to attempt to force the break-up of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' " *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 555, 54 L.Ed.2d 511, 520 (1978) (citation omitted).

It follows then that although "there exists a parental interest in the integrity of the family unit[,] . . . this interest is not absolute, but rather may be forfeited by certain parental conduct." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Accordingly, when parents abdicate their responsibility to properly care for their children, the State has an obligation to intercede and provide the necessary care. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *In re Dameron*, 306 N.W.2d at 745. This court has held that the State's interest in providing a permanent home to children in these situations and protecting them from harm are compelling governmental interests. *In re C.M.*, 652 N.W.2d at 211 (providing permanent home); *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) (protecting from harm). Thus, so long as one of the "statutory grounds for termination . . . [is] established by clear and convincing evidence, substantive due process is not offended by termination of the parent's parental rights." *In re D.J.R.*, 454 N.W.2d at 845.

We now turn to a consideration of the challenged amendment. In recent years the focus in termination cases has shifted somewhat from reunification of the family to the child's best interests. As this court has recently noted,

> the family preservation concept which guided our general national policy for the last two decades was found to be detrimental to children in some cases. Consequently, the Adoption and Safe Families Act of 1997, Public Law 105–89, 111 Statutes 2115 (codified as amended in scattered sections of 42 U.S.C.), now broadens the focus of reunification to place greater emphasis on the health and safety of the child, and mandates a permanent home for a child as early as possible.

*In re C.B.*, 611 N.W.2d at 493. This broadened focus resulted in the challenged amendment that gives "primary consideration" not only to the "physical, mental, and emotional condition and needs of the child," but also to "the child's safety" and "to the best placement for furthering the long-term nurturing and growth of the child." Iowa Code § 232.116(2).

We do not think these added considerations shock the conscience or offend judicial notions of fairness or human dignity. First of all, the amendment did not alter the underlying requirement that there must be clear and convincing evidence of unfitness under one of the enumerated statutory provisions before parental rights can be terminated. In addition, the amendment did not change the role of a child's best interests in the termination decision. They are now and have long been of paramount importance in such matters. *See In re C.B.*, 611 N.W.2d at 492; *In re Morrison Children*, 259 Iowa 301, 311, 144 N.W.2d 97, 103 (1966) ("It is well established in matters of this kind that the primary consideration is the welfare and best interest of the child."). Rather, the amendment simply articulated the concerns that clearly impact a child's best interests: the child's safety and need for a permanent home. *See, e.g., In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990) (stating that in deciding child's best interests, court looks "to the child's long-range as well as immediate interests").

Focusing on the best interests of the child once the statutory prerequisites for

termination are met is not conscience shocking, nor is it an affront to the personal dignity of the parents. Moreover, the amendment is narrowly tailored to achieve the State's compelling interests in identifying parents who pose a risk to the safety and well being of their children and providing such children with the nurturing care and treatment they have a right to expect. We find no substantive due process violation.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**