CADY, J.
(concurring specially).
I write separately to emphasize the “best interests of the child” standard has taken on a new meaning, within the last decade, which must be considered by courts in using the standard to make decisions to terminate parent-child relationships.
A child’s safety and the need for a permanent home are now the primary concerns when determining a child’s best interests. See In re K.M., 653 N.W.2d 602, 608 (Iowa 2002) (noting “the child’s safety and need for a permanent home” are “the concerns that clearly impact a child’s best interests”). This has not always been the case, and reflects a broader change in our country’s national policy regarding child welfare laws. See In re C.B., 611 N.W.2d 489, 493-94 (Iowa 2000) (recognizing and summarizing the effect of national legislation on Iowa’s child welfare laws). Before 1997, child welfare laws — including Iowa’s — focused on reuniting the family unit. Id. at 493 (noting our prior legislation sought “to prevent and eliminate the need for removal,” and “[t]he focus [wa]s on services to improve parenting”); see, e.g., Deck v. State Dep’t of Human Resources, 113 Nev. 124, 930 P.2d 760, 765 (1997) (noting the district court put in place a reunification plan that continued unsuccessfully for five years); In re M.B., 388 Pa.Super. 381, 565 A.2d 804, 810 (1989) (“One of the primary purposes of the Juvenile Act is to preserve the unity of the family whenever possible.”). Subsequently, and after Congress’s enactment of the Adoptions and Safe Families Act of 1997 (ASFA), national and state child welfare laws emphasized the importance of timely providing children with appropriate custodial care. See In re K.M., 653 N.W.2d at 608 (“In recent years the focus in termination cases has shifted somewhat from reunification of the family to the child’s best interests.”); In re C.B., 611 N.W.2d at 493-95 (summarizing the change); see also In re Lilley, 719 A.2d 327, 334-35 (Pa.Super.1998) (recognizing the impact of ASFA).
More specifically, ASFA dramatically changed the manner in which this country treats children who have been removed from the care of their parents and placed into foster care. See Adoption and Safe Families Act of 1997, Pub.L. No. 105-89, 111 Stat. 2115 (codified as amended in scattered sections of 42 U.S.C.). The legislation sets firm deadlines for reunification, followed by prompt efforts to terminate parental rights if those deadlines are not met. See 42 U.S.C. § 675(5) (2006) (outlining the instances when termination of parental rights are required). ASFA’s goals seek to prevent children from languishing in foster care by requiring parents to assume their parental responsibility quickly. See In re C.M., 652 N.W.2d at 208 (“[T]he new federal law shifted the focus from family reunification to ‘time-limited family reunification services.’ ” (quoting 42 U.S.C. § 629(a)(7))); 42 U.S.C. § 675(5) (requiring the state to file a petition to terminate parental rights if the child has remained in foster care “for 15 of the most recent 22 months”).
Iowa reacted to this federal legislation and adopted many changes to our child welfare laws in 1998. See S.F. 2345, 77th Gen. Assem., Reg. Sess. (Iowa 1998) (codified as amended in scattered sections of Iowa Code chapters 232, 237, 600). Among those changes are additions to *802 Iowa Code § 232.116, which provides the grounds by which a court may terminate parental rights. Iowa Code § 232.116 (2005). Prior to ASFA, Iowa Code § 232.116(2) stated “the court shall give primary consideration to the physical, mental, and emotional condition and needs of the child” when determining whether to terminate parental rights. Iowa Code § 232.116(2) (1997). After ASFA, that subsection now reads “the court shall give primary consideration to the child’s safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.” Iowa Code § 232.116(2) (emphasis added); see In re K.M., 653 N.W.2d at 606 (recognizing this distinction and holding the amended changes constitutional).
Our response to ASFA did not change the approach we have always taken in parental termination proceedings. Then and now, “our primary concern is the best interests of the child.” In re S.O., 483 N.W.2d 602, 604 (Iowa 1992) (citing In re Dameron, 306 N.W.2d 743, 745 (Iowa 1981)). But our response to ASFA has significantly, and not too subtly, identified a child’s safety and his or her need for a permanent home as the defining elements in a child’s best interests. See In re K.M., 653 N.W.2d at 608 (“[T]he amendment did not change the role of a child’s best interests in the termination decision. They are now and have long been of paramount importance in such matters. Rather, the [response to ASFA] simply articulated the concerns that clearly impact a child’s best interests: the child’s safety and need for a permanent home.”).
In bygone days, the best interests of a child was a broad concept that embraced a multitude of considerations, and prominently focused on the need to keep families together and to avoid the termination of parental rights if at all possible. No more. We are obligated to incorporate this new policy into the case before us, and it inevitably leads us to the proper result and our disposition. The old policies underlying our previous notions of a child’s best interests cannot be used by courts to circumvent the new policies that are meant to keep children from languishing in foster care. We must apply this new rationale with earnest in each case, as we have here, pursuant to the policies established by our legislature.