# IN THE COURT OF APPEALS OF IOWA

No. 15-1804
Filed April 6, 2016

**IN THE INTEREST OF D.R. AND J.R.,**
**Minor Children,**

**A.H., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

A mother appeals from the termination of her parental rights to two of her minor children. **AFFIRMED.**

Mark J. Neary of Neary Law Office, Muscatine, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Janet L. Hoffman, Assistant Attorneys General, for appellee State.

Christine E. Boyer, Iowa City, for minor children.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the termination of her parental rights to her children, D.R. and J.R.[1] The mother maintains the State has not proved by clear and convincing evidence that the statutory grounds for termination have been met. Additionally, she maintains termination is not in the children's best interests because of the closeness of the parent-child bond.

Because the children could not be returned to the mother's care at the time of the termination hearing and termination is in both children's best interests, we affirm the juvenile court.

**I. Background Facts and Proceedings.**

J.R. was born in 2007 and D.R. was born in 2010. Although the Iowa Department of Human Services (DHS) has been involved with the family in the past—once in 2008 and once in 2009—DHS offered only voluntary services, which the family accepted, and the courts were not involved.

DHS became involved with the family in the present case in May 2014 after the family home caught on fire while the parents were producing methamphetamine in the home. Both parents were seriously injured and had to be hospitalized. The children—although present—were not physically injured in the incident. The children were removed from the care of their parents; J.R. tested positive for exposure to methamphetamine.

Following their removal, the children were placed in the care of maternal family members. However, the maternal relatives were not able to care for the

---

[1] The father's parental rights were also terminated. He does not appeal.

children long-term, and in August 2014, the children were placed in foster care with non-relatives approximately two hours from their hometown.

In October 2014, the mother was arrested and held in county jail for charges stemming from the production of methamphetamine and the resulting house fire. The mother was released in January 2015 after she pled guilty to a lesser charge of manufacturing a controlled substance; she was ultimately given a suspended sentence with four years of probation. The father was sentenced to a term of incarceration not to exceed twenty-five years.

On July 28, 2015, the State filed a petition to terminate both parents' rights. A hearing took place on September 17 and October 14, 2015. Between the two court dates, the mother gave birth to the half-sibling of D.R. and J.R. Like the father of D.R. and J.R., the youngest child's father has a history of substance abuse and violent acts against the mother.

During the pendency of the proceedings, the mother completed substance abuse treatment and was discharged after receiving "maximum benefit." The mother had not provided any positive drugs tests after the children were removed from her care, and the social worker testified she did not have any concerns the mother was still using drugs. Additionally, the mother had consistently attended scheduled time with the children and had generally acted appropriately during their time together.

However, there were other concerns regarding the mother. She had been unemployed for the entire pendency of the proceedings except for a one-week period in early 2015. She had applied for Social Security disability, but she was denied benefits. She was also homeless throughout the proceedings. At the

time of the hearing, she was living in a homeless shelter in Maquoketa with her new baby. Based on the shelter's policy, the mother could only reside there for three to six months, and she had moved there in August 2015. Both DHS and the shelter were helping the mother attempt to find other housing, but her lack of income and her felony conviction made it difficult. Similarly, the mother testified she had looked for a job, but her felony conviction and the medical issues that accompanied her pregnancy had prevented her from finding one.

The children's play therapist also testified at the termination hearing. She had approximately thirty meetings with each of the children—sometimes individually and sometimes jointly. Based on her observations, she opined the children had been severely traumatized by the parents' actions and the fire at the home. The children did not believe it was safe for them to return to their parents. J.R. was especially worried about returning home after she learned the mother was having a new baby because she was afraid she would have to parent the new child as she had D.R. Additionally, the therapist testified that D.R. identified J.R. as his primary caretaker when she first started meeting with the children and "that is not normal."

The social worker testified the children had been traumatized and still often spoke of witnessing their father's skin fall off in the house fire. Both children had told her they did not want to return to live with their mother. J.R. had expressed that she no longer wanted to attend visits with the mother because she wanted a "forever home." Additionally, although there were not concerns the mother was using illegal substances, there was concern that she still surrounded herself with inappropriate people, such as the father of her new

child and her brother, whose own children were recently removed due to his use of methamphetamine and his violent actions.

On October 16, 2015, the juvenile court terminated the mother's parental rights to both D.R. and J.R. pursuant to Iowa Code section 232.116(1)(f) (2015).

The mother appeals.

**II. Standard of Review.**

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is considered "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

Iowa Code chapter 232 follows a three-step analysis governing the termination of parental rights. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The three-step framework is well established and need not be repeated here. *See id.*

The juvenile court terminated the mother's parental rights to D.R. and J.R. pursuant to Iowa Code section 232.116(1)(f). The court may terminate under that section when the State proves by clear and convincing evidence all of the following: the child is four or older, has been adjudicated a child in need of assistance, has been removed from the parents' physical custody for at least twelve of the last eighteen months, and cannot be returned to the parents'

custody at the time of the termination hearing. Iowa Code § 232.116(1)(f). Here, the mother only challenges the court's finding that D.R. and J.R. could not be returned to her care at the time of the termination hearing.

At the hearing, everyone agreed there were no longer concerns the mother was using illegal substances. Additionally, she had consistently attended scheduled time with the children and generally acted appropriately during them. However, we agree with the juvenile court that the children could not be returned to the mother's care at the time of the termination hearing. The mother had only short-term housing and did not know where she would move once her time ran out at the shelter. She was unemployed and did not have a source of income. The mother intended to look for employment soon and hoped to find a job, but as she testified, she does not have a good employment record and now has a felony conviction to overcome. Although the children had received counseling and had spent at least four hours a week with the mother throughout the pendency of the case, the children still did not feel safe with their mother. They had both expressed that they did not want to return to their mother's care. As the juvenile court found:

> The evidence is clear that while at times the children have enjoyed seeing their mother, both children fear being placed with their mother on a full-time basis. Despite some progress in therapy, the children have not overcome the severe trauma inflicted upon them by both parents. As a result, visitation has not progressed. It remains fully supervised. . . .
> . . . The children have demonstrated in therapy that they do not believe they will be safe with their mother and they do not trust her. The events that led to adjudication cause both children extreme mental distress. The parents have been unable to regain the children's trust and create an atmosphere where the children will feel safe.

We acknowledge that the mother had made progress during the pendency of the proceedings, but the State proved by clear and convincing evidence the children could not be returned to their mother's care at the time of the termination hearing.

The mother also maintains that termination is not in the children's best interests because of the closeness of the parent-child bond. Multiple people familiar with the family testified that the children are bonded with the mother. However, as stated above, the children also fear being returned to their mother's care, and both have expressed that they do not want to return home. The children are reported to be thriving in the care of the foster family, and the family has expressed the desire to adopt both D.R. and J.R. The children recognize their foster parents as "mom" and "dad." Additionally, the children are both doing well in school and have become more healthy and active. "[A]ny detriment [the children] will suffer as a result of the severance of the parental bonds is more than outweighed by the benefits that will accrue from [their] placement in a safe, stable, and supportive environment." *In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002). Thus, termination of the mother's parental rights is in the children's best interests.

Upon our de novo review of the record, we conclude no permissive factor of section 232.116(3) makes termination unnecessary.

We affirm the juvenile court's termination of the mother's parental rights to D.R. and J.R.

**AFFIRMED.**