# IN THE COURT OF APPEALS OF IOWA

No. 17-1036
Filed September 13, 2017

**IN THE INTEREST OF R.T.,**
**Minor Child,**

**R.T., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, Judge.

An incarcerated father appeals an order terminating his parental relationship with his four-year-old son. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Theresa Rachel of Fankhauser Rachel, P.L.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Joseph W. Kertels of Juvenile Law Center, Sioux City, guardian ad litem for minor child.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

An incarcerated father, Roel, appeals the termination of his parental relationship with his four-year-old son, R.T.  He argues the State failed to offer clear and convincing proof of the elements under Iowa Code section 232.116(1)(i) (2017).  After an independent review of the record,[1] we agree the State did not meet its burden.  Accordingly, we reverse the termination order and remand for further proceedings.[2]

### I.    Facts and Prior Proceedings

Authorities removed R.T. from his mother's care on July 22, 2016, after she acted erratically at a convenience store in Sloan, Iowa.  Police found the then-three-year-old child in the mother's car amid piles of discarded food, clothing, and dirty diapers.  Police arrested the mother for child endangerment.  Roel, who was not married to R.T.'s mother but had been involved with her for many years, was in jail awaiting sentencing on unrelated charges at the time of R.T.'s adjudication as a child in need of assistance (CINA).  Roel has remained

---

[1] Termination-of-parental-rights proceedings call for de novo review.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  We are not bound by the factual findings of the juvenile court, but we give them weight.  *Id.*  Proof must be clear and convincing.  *Id.*  Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.* (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

[2] Roel also argues the juvenile court erred in the following ways: (1) finding the Iowa Department of Human Services (DHS) satisfied its reasonable-efforts requirement despite not investigating the possibility of prison visitation, (2) denying his request for an additional six months for reunification efforts, and (3) not ordering placement of R.T. with paternal relatives in Texas.  Because we find the State failed to prove the statutory grounds for termination, we do not reach his other claims.

incarcerated in Nebraska for the entirety of this child-welfare case and expected to be released on January 1, 2018.[3]

The DHS placed R.T. in foster care with his paternal uncle and aunt, who immediately took the child for medical and dental checkups. The guardian ad litem (GAL) submitted a July 29, 2016 report from the pediatrician who found the child was "well nourished." The GAL also submitted a report from the dental office. R.T.'s dental surgeon found twelve of the child's twenty teeth had cavities, causing R.T. considerable pain. Four teeth needed crowns, two needed fillings, and six needed to be extracted due to the size of the cavity or infection. R.T. required general anesthesia for the comprehensive dental treatments in early August 2016. Because R.T.'s front teeth were extracted, he had to use a pediatric partial denture to help him speak and eat. The surgeon opined the amount of infection and extent of decay indicated R.T.'s "cavities had been present for an extended period of time and should have been noted and addressed much sooner than they were."

R.T. remained in the care of his paternal uncle and aunt through the duration of the CINA case, by all accounts integrating well into their busy household. Although he was incarcerated, Roel took advantage of parenting classes, as well as substance-abuse and mental-health treatment offered by the Nebraska Department of Corrections. R.T. had sporadic telephone contact with Roel during the pendency of the case, and Roel sent letters to R.T. But the DHS did not offer Roel any in-person visitation with his son.

---

[3] Roel testified he was convicted of criminal impersonation, operating while intoxicated, and charges arising out of his failure to appear for multiple court hearings.

Roel requested that the State provide reasonable efforts toward reunification with R.T., "including phone calls, letters, and in-person visits at the prison." In response, on November 18, 2016, the State asked the juvenile court to waive its requirement to provide reasonable efforts as to both the mother and father. *See* Iowa Code § 232.102(12) (permitting court to waive the reasonable-efforts requirement if it "determines by clear and convincing evidence that aggravated circumstances exist," which include a finding the circumstances under section 232.116(1)(i) have been satisfied). The district court declined to find aggravated circumstances warranting waiver. Still, the DHS did not offer Roel visitation with R.T.[4]

On January 18, 2017, the State filed a petition to terminate the parental rights of both the mother and father. The paternal grandparents and a paternal aunt filed motions to intervene in the termination proceedings. The juvenile court addressed the motions to intervene at the joint permanency-review and termination hearing, which took place on May 15, 2017.

---

[4] A DHS social worker testified she was aware the two primary facilities where Roel had been incarcerated throughout the proceedings offered visitation, but she claimed she did not consider visitation an option "[b]ecause [FSRP workers are] not allowed to transport across state lines." Later, she hedged her statement, indicating a trip just across the border to North Sioux City might be allowed "but to be traveling that far, you know, into Lincoln, Nebraska, [approximately two hours from R.T.'s placement by car] would not be approved." Shortly thereafter, she acknowledged that regardless of where Roel was incarcerated, she would not have recommended visitation "[b]ecause of the environment. It's . . . a prison, you know, with criminals, and I just don't think that's a good environment for a little boy."

In the order terminating Roel's parental rights, the juvenile court found: "The [DHS] failed to make the correct analysis with respect to face to face visits regarding the father and the minor child." The court noted the DHS did not explore "whether in person visitation was feasible at the prison," but the court nevertheless concluded "the services provided to the father satisfy the statutory mandate," considering the distance between R.T. and the facility where Roel was housed for the majority of the proceedings, as well as the length of Roel's sentence.

The State offered reports filed by the DHS and family safety, risk, and permanency (FSRP) workers but did not call any witnesses at the hearing. Roel called the DHS social worker who had managed the case and an FSRP worker to testify. Roel, who was living in a work release center in Lincoln, Nebraska, testified telephonically. At the time of the hearing, Roel had not seen R.T. in nearly a year, but he testified that before his incarceration, he had taken an active role in caring for R.T.

The juvenile court issued a decision terminating the parental rights of both the mother and father under Iowa Code section 232.116(1)(i).[5] The court did not specifically link Roel's actions to the requirements of subsection (i) in its ruling. Roel now appeals.[6]

## II.    Analysis

Termination of parental rights under subsection (i) requires clear and convincing evidence of the following: (1) the child meets the definition of a [CINA] based on a finding of physical or sexual abuse or neglect due to the acts or

---

[5] The State additionally alleged the court should terminate Roel's parental rights under Iowa Code section 232.116(1)(b) (allowing termination upon a finding "the child has been abandoned or deserted") and (h) (allowing termination upon a finding (1) the child is three years old or younger; (2) the child has been adjudicated a CINA; (3) the child has been removed from the parent's custody for at least six of the past twelve months, or for the last six consecutive months with any trial period lasting under thirty days; and (4) the child cannot be returned to the parent's care at the present time). The court declined to terminate under subsection (b), reasoning Roel's phone contact and letters precluded a finding of abandonment. The court also declined to terminate under subsection (h) because R.T. was four years old at the time of the termination hearing. *See In re N.N.*, 692 N.W.2d 51, 53–54 (Iowa Ct. App. 2004) (finding subsection (h) applies to "children who are past their third birthday but who have not yet reached age four" by the time of the termination hearing). On appeal, the State does not ask us to affirm on either of these grounds. *See In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016) (holding "the prevailing party in a termination-of-parental-rights action need not file a cross-appeal or a rule 1.904(2) motion to assert an alternative ground for affirmance on appeal that was raised before the juvenile court").

[6] The mother does not appeal the termination of her parental rights.

omissions of one or both parents, (2) the abuse or neglect presented a significant risk to the child's life or constituted an imminent danger to the child, and (3) the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time. *Id.* § 232.116(1)(i).

Roel does not challenge the evidence in support of the first or second elements under subsection (i). But citing his active participation in all of the services offered to him, Roel contests the State's proof that the offer or receipt of services would not correct the conditions which led to R.T.'s neglect within a reasonable period of time.

The State identifies Roel's contribution to R.T.'s serious dental concerns and subsequent failure to seek appropriate medical treatment as the relevant "act or omission" that caused R.T. to meet the definition of a CINA. The State argues providing additional services would not remedy the concerns which led to that neglect, considering: (1) the meager monetary support Roel provided R.T. throughout the course of the proceedings, (2) Roel's statement he could not take R.T. back into his care at the time of the termination hearing, (3) the "disruptive nature" of Roel's phone calls with R.T., (4) Roel's statement at the hearing he could not refuse his son when he asked for unhealthy food, and (5) Roel's request for visitation with R.T. despite the long travel time it would entail.

As an initial matter, neither the amount of child support Roel provided to the foster family nor the fact that Roel, who remained incarcerated, could not take R.T. into his care at the time of the termination hearing informs our analysis of subsection (i). These considerations have no bearing on whether the offer or

receipt of services would correct the conditions which led to R.T.'s dental condition within a reasonable period of time. *Compare id.* § 232.116(1)(h)(4) (requiring proof "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time"), *with id.* § 232.116(1)(i)(3). *See generally In re K.M.*, 653 N.W.2d 602, 605 (Iowa 2002) (discussing third element of paragraph (i) and rejecting testimony of therapist that parents had corrected conditions leading to daughter's exposure to sexual abusers).

Next, we consider the State's contention: "The father was struggling to properly understand how to interact with his son[] when phone calls were taking place, to the point that his phone calls with the child had to be supervised due to their disruptive nature." This assertion is not supported by the record. Although the DHS worker initially testified Roel's phone calls were "disruptive and confusing," she later clarified she was referring to phone calls from R.T.'s extended family. The FSRP worker who supervised the phone calls described Roel as both "loving" and "appropriate."

Similarly, we disagree with the State's spin on Roel's testimony that "he was unable to deny his son any wish that he requested, even with a complete disregard for his health, because he did not have the ability to refuse his son," demonstrating the parenting classes had not "strengthened his resolve." At trial, Roel acknowledged he had contributed to R.T.'s poor dental hygiene, explaining: "[H]e's my only son, so I baby him a lot, Miss. You know, I let him eat what he wants to eat. He loves candies like any other little boy, and that's a mistake on my part, that I would always buy him whatever he wanted at the store." Later in the hearing, Roel again expressed regret about his past tendency of indulging

R.T., explaining he assumed the cavities would be resolved when R.T.'s baby teeth fell out and: "I didn't see that it was doing him harm, you know, but I realize now that I should have probably not done that." Taken as a whole, we think Roel's testimony demonstrates a growing awareness of how his own conduct led to R.T.'s health concerns.

Lastly, we find Roel's request for visitation does not indicate, as the State maintains, that "despite the services offered, [Roel] had not internalized how to assess what was in the best interest of his child." The DHS declined to offer Roel any services to promote reunification.[7] Roel's request for visitation—even if impracticable—and other services reflects a desire to maintain a relationship with R.T. We will not fault Roel for fighting to preserve the parent-child relationship.

Finding none of the considerations cited by the State demonstrate the offer or receipt of services would not correct the conditions which led to the neglect of R.T. within a reasonable period of time, we reverse the juvenile court's order and remand for further proceedings.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[7] At trial, the DHS social worker stated she encouraged Roel to complete programs offered by the Department of Corrections but did not offer him any other services. She reasoned: "I couldn't ask him for anything because he's been incarcerated throughout the entirety of this case."