# IN THE COURT OF APPEALS OF IOWA

No. 19-0656
Filed June 5, 2019

**IN THE INTEREST OF C.G.,**
**Minor Child,**

**B.M., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

The father appeals the termination of his parental rights to his child. **AFFIRMED.**

Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

Brenda Drew-Peeples of Drew-Peeples Law Firm, Davenport, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals the termination of his parental rights to his child, C.G., born in June 2016.[1]  The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d) and (h) (2018).  He maintains the State failed to prove the statutory grounds by clear and convincing evidence, termination is not in the child's best interests, and a permissive factor weighs against severing the parent-child relationship.

We review termination proceedings de novo.  *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).  When the juvenile court terminates on more than one statutory ground, we may affirm on any ground we find supported by clear and convincing evidence.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  Here, we choose to consider paragraph (h), which allows the juvenile court to terminate parental rights when all of the following are true:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).  The father challenges only the fourth element— whether C.G. could be returned to his care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean at the time of the termination hearing).

---

[1] The mother's parental rights were also terminated.  She does not appeal.

The father has appropriate housing, seems generally able to provide for C.G.'s needs, and has positively engaged in therapy and an anger-management course. However, it is not clear the father is free of illegal substances.

C.G. was in the father's care for less than four months[2] when DHS became concerned in January 2018 that he was using illegal substances while caring for her. The father began exhibiting behavioral indicators of using drugs—being extremely fidgety, unable to focus, and scratching his arms—and a service provider witnessed the father engage in what the provider believed was a drug deal. When DHS asked to drug test both the father and C.G., the father refused and denied use of illegal substances. The court then ordered both C.G. and the father to undergo drug testing. The father's urinalysis (UA) came back negative for illegal substances, but the father removed the sweat patch that was placed on him. *See In re A.W.*, No. 18-0382, 2018 WL 2084913, at *2 (Iowa Ct. App. May 2, 2018) (considering expert testimony from a forensic toxicologist who testified "a sweat-patch test is designed to detect smaller amounts of drugs than UAs" and generally tests for drug use over a longer period of time). C.G. tested positive for methamphetamine and marijuana, which the father was unable to explain. The court ordered C.G.'s removal from the father's care.

Since then, the father refused or failed to comply with every random drug test requested by DHS. At the termination trial, he offered general, conclusory

---

[2] C.G. came to the attention of the Iowa Department of Human Service (DHS) when she was born with THC in her system. She was adjudicated a child in need of assistance in June 2017 as a result of mother's use of marijuana around her. At that time, C.G. was in the sole care of the mother and the father was not involved. After C.G. was removed from the mother's care, the father made contact with DHS and began visits with the child. C.G. was placed in the father's care in October 2017.

statements that he was unable to test when asked, but he did not provide specific reasons; he admitted he had his own transportation and was not working during at least some of the testing windows. The father provided DHS and the court with negative results from a few UAs he undertook on his own between the removal of C.G. and the final day of the termination hearing in February 2019, but there is no indication those tests were random. He testified he was not using illegal substances and that substance abuse was not an issue for him. But the court, in what we understand to be a credibility finding, stated in its written ruling:

> Random testing was intended to show [the father] was telling the truth when he claimed he was not currently using drugs. His refusal to do any testing, even when able to go to the testing center, is evidence he believed the test would be positive. The Court is hard pressed to accept any other explanation for refusing to test.

The father's credibility regarding his use of illegal substances is further called into question when we consider the reports from DHS. At one point, the father admitted to occasional drug use as recently as October 2016. But he later reported his last use of illegal substances was nine years prior. This statement is contradicted by the mother's admission to DHS that she and the father have used illegal substances together. Moreover, the father's resistance to drug testing and completing a substance-abuse evaluation have persisted throughout his involvement with DHS—even when he became more compliant in other areas of the case plan. When the father did complete a substance-abuse evaluation in June 2018, the evaluator recommended outpatient treatment and diagnosed the father with methamphetamine use disorder, mild. The father never participated in a treatment program.

We cannot say C.G. would be safe from further adjudicatory harm if she was returned to the father's care. *See In re M.M.S.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication. The threat of probable harm will justify termination."); *see also* Iowa Code § 232.116(1)(h)(4). We agree with the juvenile court that the statutory grounds for termination pursuant to section 232.116(1)(h) have been met.

Next, the father combines his argument regarding C.G.'s best interests, *see* Iowa Code § 232.116(2), and the court's power to apply a permissive factor to save the parent-child relationship, *see id.* § 232.116(3). He maintains he and the child are so bonded that termination of his rights would be detrimental to the child. *See id.* § 232.116(3)(c). He also argues that her lack of strong bond with her foster family weighs in his favor. *See id.* § 232.116(2)(b). We decline to consider C.G.'s bond or integration with her foster family in support of the father's claim, as C.G. was removed from the home of her first foster family—with whom she was very close—because the father engaged in threatening behavior toward them. And while we agree that C.G. is bonded with her father, the father has not demonstrated that termination of his rights will be detrimental to C.G. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing that once the State proves a statutory ground for termination, "the parent resisting termination has the burden to establish an exception to termination under" section 232.116(3)); *see also In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002) ("Any detriment [the child] will suffer as a result of the severance of the parental bonds is more than outweighed by the

benefits that will accrue from her placement in a safe, stable, and support environment").

Because the statutory grounds for termination have been proved by clear and convincing evidence, termination is in C.G.'s best interests, and no permissive factor weighs against severing the parent-child relationship, we affirm.

**AFFIRMED.**