# IN THE COURT OF APPEALS OF IOWA

No. 20-0665
Filed July 22, 2020

**IN THE INTEREST OF E.C., K.C., and M.C.,**
**Minor Children,**

**K.O., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Jones County, Jason A. Burns, District Associate Judge.

The mother appeals the termination of her parental rights to her three children. **AFFIRMED.**

John D. Jacobsen of Jacobsen, Johnson & Wiezorek, P.L.C., Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Judith Jennings Hoover, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to her three children, who range in age from twelve to five years old.[1] The juvenile court terminated the mother's rights to all three children under Iowa Code section 232.116(1)(e) and (f) (2019). On appeal, the mother does not contest the statutory grounds for termination. She contends only that termination of her rights is not in the children's best interests and the permissive exception in section 232.116(3)(c) should be applied to save the parent-child relationships. Our review is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (concluding "the proper standard of review for all termination decisions should be de novo").

Beginning in the summer of 2017, the Iowa Department of Human Services conducted several child-abuse assessments on this family after multiple allegations the parents were using methamphetamine around the children and other concerns including homelessness, domestic violence in the parents' relationship, and insufficient food. The children were eventually removed from the parents' care in September 2018 and remained outside their care at the time of the termination hearing in February 2020.

On the path to reunification with the children, the mother was asked to drug test at least fifty-five times between September 2018 and February 2020. She participated only a handful of times, and, of the times she participated, two of those tests were positive for methamphetamine. One of the positive drug tests was in early January 2020, about a month and a half before the termination hearing.

---

[1] The father's parental rights were also terminated. He does not appeal.

Additionally, throughout the case, the mother failed to participate in recommended mental-health therapy and substance-abuse treatment. At the time of the termination hearing, she was living with a paramour with a history of violence. The mother has been involved in at least three relationships with issues of domestic violence—her current relationship, her relationship with the father,[2] and at least one relationship prior to her relationship with the father—but she also failed to engage in any services to address this issue.

Here, the mother maintains termination of her rights is not in the children's best interests. In making her argument, she largely relies on the claim that she and the children share a strong bond. But a strong bond alone cannot satisfy our best-interest analysis because we must also weigh specific statutory factors. In determining what is in the children's best interests, we are required to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *see also P.L.*, 778 N.W.2d at 37 (rejecting the use of a court's "own unstructured best-interest test" and requiring courts "to use the best-interest framework established in section 232.116(2)"). While the mother maintains termination of her rights is not in the children's best interests, she does not contest the juvenile court's determination that she cannot care for them. *See* Iowa Code § 232.116(1)(f)(4). Nor does she argue that a guardianship should have been established or that she should have been given more time to work toward reunification. The fact remains

---

[2] During his testimony, the father denied there was domestic violence in his and the mother's relationship.

that these children need someone to parent and care for them. And, though the children were removed from her care for approximately seventeen months before the termination hearing, the mother was no closer to being able to care for them in February 2020 than she was at the time of their removal. The "defining elements" of a child's best interests are their safety and need for a permanent home. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). As the mother is unable to provide either of these things for her children at this time, termination of her parental rights is in their best interests.

The mother also argues that an exception to termination should be applied to save the parent-child relationship. Section 232.116(3)(c) provides that the court need not terminate if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Our focus under this step of our analysis is on the mother's argument regarding the bond she shares with her children. And, while there are recognized and acknowledged bonds between the children and mother, we cannot say those bonds outweigh the children's need for responsible and reliable parenting. When asked if she thought termination would cause the children undue trauma, the social worker testified, "[T]hey love their mom. They look forward to see her for visits, but I don't think that outweighs the safety factors in this case. She's not able to care for them on a full-time basis. They're comfortable where they are, and that's what would be best for them." The social worker also urged that the children are "ready for an answer" on where they will be living and who will be caring for them. The family safety, risk, and permanency worker similarly testified that the children are "becoming very anxious about—knowing where

they're going to be." These children need permanency, and termination of the mother's parental rights is the first step in providing that to them. As any harm that termination of the mother's rights may cause will not outweigh the benefit these children will gain from permanency, we agree with the juvenile court that no permissive factor should be applied. *See In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**