# IN THE COURT OF APPEALS OF IOWA

No. 25-1392
Filed November 13, 2025

**IN THE INTEREST OF W.C and G.C.,**
**Minor Children,**

**S.V., Mother,**
    Appellant**,**

**N.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Korie Talkington, Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS**.

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant mother.

Barbara E. Maness, Davenport, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor children.

Considered without oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**GREER, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to two children W.C. (born in 2016) and G.C. (born in 2018). The mother argues that (1) the State failed to meet its burden under Iowa Code section 232.116(1)(e), (f), (k), and (*l*) (2025), and (2) the court erred by not finding that an exception to termination, an extension of time, or a guardianship was in the children's best interests. The father argues the State did not prove that (1) the children could not have been returned home at the time of termination or within a reasonable amount of time, and (2) termination of parental rights is in the best interests of the children. We affirm the termination of the mother's and father's parental rights to W.C. and G.C.

## I. Background Facts and Proceedings.

The family became involved with the Iowa Department of Health and Human Services (HHS) most recently in January 2024. Police responded to a domestic-violence incident between the mother and father. W.C. and an older paternal half sibling were present during the incident.[1] G.C. was not present. It was reported to police that the father strangled the mother and pushed her over a second-story railing. Soon after, there was a warrant for the father's arrest for domestic abuse assault.

In February, HHS began offering services to the mother, and she was cooperating. The father was not responsive to services offered by HHS and was not taking accountability for his actions. The mother moved to a different town to

---

[1] The older half sibling is the father's child and is not involved in these termination proceedings.

distance herself from the father, but, in March, she reported that he had visited her and the children in their new home despite a no-contact order between her and him.

On April 16, the mother reported to HHS that she would not be continuing to cooperate with services or allowing HHS to have access to the children. A child in need of assistance (CINA) petition was filed. The mother was served, but the father avoided service. In May, the mother tried to run over the father while the children were in the vehicle. This incident resulted in a founded child abuse report, and the mother was arrested. On May 30, the juvenile court issued an ex parte removal order, and the children were removed from parental custody and placed in relative care.

In June, the mother checked herself in for inpatient mental-health treatment and tested positive for amphetamines, cocaine, marijuana, and benzodiazepines. On June 11, the children were adjudicated CINA due to domestic violence and a lack of supervision, and the juvenile court noted substance abuse as a concern. In August, the juvenile court authorized another ex parte removal order, and the children were placed in the custody of HHS for placement in family foster care. That same month, the mother tested positive for methamphetamine.

Throughout the timeline of this case, the mother began and failed to complete several substance-use treatment programs. In March 2025, the mother tested positive for cocaine and methamphetamine. In May, the mother gave birth to another child, whose umbilical cord tested positive for methamphetamine.

On May 29, a petition for termination of the mother's and father's parental rights was filed. In June and July, the mother missed six drug tests scheduled by

HHS and gave no reason for failing to complete testing. The mother's July 22 drug test was positive for cocaine. That day, the mother entered inpatient substance-use treatment. During this time, the mother self-reported irregular participation in mental-health treatment, and she was not consistently taking mental-health medication.

The mother's visitation with the children while they were in HHS custody was inconsistent. The mother routinely missed visits with the children, claiming illness or appointments for her new child. The mother did not provide proper documentation to HHS for her missed visits. The mother missed three visits in a row in June. The mother had only attended about "50% of the visits" scheduled for her and the children.

Turning to the history involving the father, he has not seen the children since their removal in May 2024. In November of that year, he was incarcerated in part for abusing the mother and violating the no-contact order. He remained incarcerated through the time of the termination hearing. Prior to his incarceration he had few interactions with HHS and failed to take accountability for his actions or participate in services offered to him.

In August, a termination hearing was held. At the hearing, the HHS social work case manager testified that she had spoken with the father, and he stated that he was on the waitlist to begin domestic violence services.

After the hearing, the juvenile court terminated the mother's rights to both children under Iowa Code section 232.116(1)(e), (f), (k), and (*l*). The court also terminated the father's parental rights to both children pursuant to Iowa Code section 232.116(1)(b), (e) and (f). Both parents appeal.

**II. Standard of Review.**

Our review is de novo. *In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025). And "[w]hile we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). Our primary concern is the children's best interests. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Analysis.**

We consider each appeal separately because "each parent's parental rights are separate adjudications, both factually and legally." *J.H.*, 952 N.W.2d at 171.

**A. Mother's Appeal.**

The mother challenges the statutory grounds for termination and alleges that the juvenile court failed to find an exception to termination, or an extension of time, or that guardianship was in the children's best interests.

1. *Statutory Grounds.*[2] The juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(e), (f), (k), and (*l*). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to review termination under section 232.116(1)(f), which allows the court to terminate when the children are

---

[2] The father attempts to argue that his rights should not have been terminated in part because the children could have been returned to the mother at the time of the termination. Each parent has a separate adjudication of their rights, and one cannot assert an argument on behalf of the other. *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). The father does "not have standing to assert" that the children could have been returned to the mother's care "in an effort to reverse the termination of [his] parental rights." *In re P.R.K.*, No. 18-0218, 2018 WL 1633526, at *2 (Iowa Ct. App. Apr. 4, 2018).

four years of age or older, have been adjudicated as children in need of assistance, and have been removed from the physical custody of the parent for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days. And it must be shown that there is clear and convincing evidence that the children cannot be returned to the custody of the parent at the present time, which means the time of the termination trial. Iowa Code § 232.116(1)(f). The mother only challenges the finding that the children could not be returned to her at the time of the hearing. The mother alleges the children could have stayed with her at the inpatient treatment center. Although the mother had a place for the children to live, she had not done the work to show she could provide a safe, long-term home.

Here, the mother had just recently availed herself of another treatment facility and when her baby was born in May 2025, the tests showed exposure to methamphetamine. "We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *A.B.*, 815 N.W.2d at 776; *see also In re J.P.*, No. 19–1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("Methamphetamine is a scourge. . . . A parent's methamphetamine use, in itself, creates a dangerous environment for children." (cleaned up)). Thus, with unresolved substance-use issues and several previous failed courses of treatment, the State met the burden to show the children could not safely be returned to the mother's custody at the time of the termination trial.

In July, the Foster Care Review Board recommended termination of the mother's parental rights "due to limited progress by [the mother]" including her inability to maintain sobriety. Commendably, the mother enrolled herself into

inpatient substance-use treatment on July 22. But, that same day, she tested positive for cocaine. At the time of the termination hearing, she had only been in treatment for a few weeks and had previously never successfully completed a substance abuse treatment program.

The mother has had over a year to address her substance use and a showing of a short period of treatment preceding the hearing is not enough to prevent termination. *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (holding a mother's short stint of sobriety prior to the termination hearing did not render her fit to resume custody of her child). As the district court noted, the mother's new substance-use treatment "is a very positive step for her and her new baby, but [W.C] and [G.C.] have already been waiting for far too long." The mother had not yet established sustained sobriety, so we affirm the juvenile court's determination that the grounds for termination under Iowa Code section 232.116(1)(f) were met. Because we affirm on this statutory ground, we need not consider the mother's other statutory ground challenges. *In re A.B.*, 815 N.W.2d at 774.

2. *Best Interests.* The mother challenges whether termination is in the children's best interests. When determining children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *accord In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We consider the children's long-range and immediate interests. *J.E.*, 723 N.W.2d at 798. "It is simply not in the best

interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *Id.* (citation omitted).

The children have improved in school and behaviorally since being removed from parental custody. The children's court appointed special advocate and guardian ad litem (GAL) also recommended termination of parental rights. The mother has had over a year to achieve sobriety and stability and she has been unable to do so. "Children simply cannot wait for responsible parenting." *Id.* (citation omitted). Because these children require and deserve structure and consistency, we find it is in their best interests to terminate the mother's parental rights.

3. *Parent-Child Bond.* The mother asserts that her rights cannot be terminated because an exception exists "due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The burden rests on the mother to prove an exception by clear and convincing evidence that any disadvantage to the children from termination overcomes her inability to care for their needs. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Under this section, grounds that preclude termination are permissive and not mandatory. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the children's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

As the GAL and district court noted, "The children are bonded to their mother and will suffer if the petition to terminate parental rights is granted, but it is necessary to do so." At the time of the termination hearing the mother had only

just begun her substance-use treatment and had not yet adequately addressed her mental health. On top of that, the mother had missed many of the scheduled visits with the children. The mother has not met her burden of proof to establish an exception to termination. We affirm the juvenile court's decision to not apply the permissive exception under section 232.116(3)(c).

4. *Additional Time*. The mother argues additional time in lieu of termination is in the children's best interests. This is an option available to us under Iowa Code section 232.117(5), which permits the juvenile court to deny termination and enter a permanency order pursuant to Iowa Code section 232.104. Under section 232.104(2)(b), the court may authorize a six-month extension of time if "the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." But we "cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.,* 843 N.W.2d at 112. Patience for parents attempting to remedy their parenting skills is already built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494–95 (Iowa 2000) (noting that after "the limitation period lapses, termination proceedings must be viewed with a sense of urgency").

In the July 2025 report, HHS noted that the mother still required fully supervised visits with the children and she "[had] low stability with housing, employment, safety, and sobriety." HHS did "not believe that additional time or services would remedy the adjudicatory risk of harm" in this case. In August 2025, the GAL reported that the mother is no "closer now to being able to safely care for the children than [she was] when the CINA petition was filed." Due to the mother's

lack of progress, we cannot find that the risk of adjudicatory harm to the children will not be present in six months. We affirm the juvenile court.

5. *Guardianship*. The mother requests guardianship with a family member instead of termination. To establish the guardianship, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child[ren]." Iowa Code § 232.104(4)(a). Guardianship is not preferrable to permanency for the children. *See A.S.*, 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to termination" (citation omitted)). A primary concern for children's best interests is their "safety and need for a permanent home." *In re K.M.*, 653 N.W.2d 602, 608 (Iowa 2002).

As noted by the GAL, no placement option for guardianship exists. Previous placements with the mother's family members had only lasted, at most, a few weeks, and the GAL could not recommend placement with the father's family either. The children made improvements in their education and behaviors since entering foster care. Termination of the mother's rights will provide the stability and permanency these children need and deserve. *See A.S.*, 906 N.W.2d at 478.

**B.     Father's Appeal.**

First, the father argues the State failed to prove by clear and convincing evidence that the children could not have been returned home at the time of termination or within a reasonable amount of time. The court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (e), and (f). The father's petition fails to challenge termination under section 232.116(1)(b), which requires the State to prove by "clear and convincing evidence that the child has

been abandoned or deserted." Thus, the father waived his claim that termination was improper under this section. *See In re S.R.*, No. 03-1332, 2003 WL 22700899, at *1 (Iowa Ct. App. Nov. 17, 2003) (holding a father waived error by not challenging all statutory grounds for termination found by the juvenile court). Because we only need to find termination on one ground when multiple sections are cited, *A.B.*, 815 N.W.2d at 774, and the father waived his challenge under section 232.116(1)(b), we affirm the juvenile court on this issue.

Second, the father asserts that it would be in the best interests of the children for them to be placed in a guardianship with their paternal aunt. As noted above, a guardianship is not legally preferable to termination of parental rights. *A.S.*, 906 N.W.2d at 477. To establish the guardianship, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child[ren]." Iowa Code § 232.104(4)(a). In determining the best interests of children, we consider the long-term and immediate interests of the children. *J.E.*, 723 N.W.2d at 798.

The father did not participate in services with HHS and did not see the children after they were removed from parental custody. As the juvenile court noted, he did not show "a desire to care for the children until after he was arrested." The GAL described the father as "violent and abusive" and "not a safe parent." We find termination is in the children's best interests. The father suggests the children be placed with their paternal aunt, but the guardian ad litem could not recommend placement with her as she was previously unwilling to have the children in her care. We affirm the decision of the juvenile court on this issue.

**IV. Conclusion.**

For the above reasons, we affirm the juvenile court's termination of both the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**