In the Interest of M.S. and T.S., Minor Children,

K.S., Father, Appellant,

State of Iowa, Appellee.

No. 93–1140.

Supreme Court of Iowa.

July 27, 1994.

Leslie D. Lamping of Day & Meeker, Washington, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Gerald N. Partridge, County Atty., for appellee.

Craig A. Davis, Washington, guardian ad litem, for minor children.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

SNELL, Justice.

I. Introduction

This appeal involves the question of whether appellant K.S.'s parental rights should be terminated with respect to his children M.S. and T.S. The district court found K.S. abandoned his two children and ordered his parental rights terminated pursuant to Iowa Code section 232.116(1)(b) (1991). Our court of appeals reversed, holding that K.S. abandoned the children, but that his parental rights should not be terminated. We granted the State's application for further review of the case. The sole issue is whether the

termination of K.S.'s parental rights is in the best interests of the children.

## II. Standard of Review

■ Our review of orders terminating parental child relationships is de novo. *In re M.L.O.*, 477 N.W.2d 393, 394 (Iowa 1991). Under de novo review we are not bound by the trial court's findings, but give those findings some weight, especially as to the credibility of witnesses. *In re Marriage of Robbins*, 510 N.W.2d 844 (Iowa 1994).

## III. Facts

M.S. and T.S. are the children of K.S. and D.R. K.S. contested paternity regarding T.S. but now admits he is her father. The children's mother, D.R., voluntarily waived her parental rights prior to trial. At the time of trial, M.S. was twelve years old, T.S. was seven. The children have lived their entire lives in the home of their paternal grandmother, Z.S. Z.S. cares for two other children borne by D.R., but conceived by different fathers. Together, the four children have been raised as siblings.

With the exception of a few months in the early 1980's, K.S. has not lived with his children. K.S. provides no financial support for his children. He is uninvolved in their education. He provides little or no support of any kind for their medical care, nutrition or clothing. Four or five times per year, K.S. stops by his mother's house to see the children. The record shows little if any interaction between K.S. and his children during these visits. On a few occasions since 1986, K.S. brought garbage bags filled with second-hand clothing and a bag of groceries. That is the extent of his contact with and support for his children during their lives.

After one of K.S.'s rare visits to the children, a finding of child abuse by K.S. involving M.S. was made. According to Z.S., K.S. spanked M.S. with a wooden lath. The board had a nail in it which punctured M.S. in the hip area when K.S. struck him with it. The incident led to a Department of Human Services investigation that concluded M.S. and T.S. were abused and neglected children in need of assistance (CINA).

During K.S.'s absence from his children's lives, he fathered two other children who live with him and his live-in girlfriend. Those children, as far as can be determined under this record, seem to receive adequate care.

On the stand, K.S. claimed the reason he had so little contact with M.S. and T.S. was because he believed he was subject to a no contact order of the court. When asked in cross-examination why he visited the children at all then, he had no response. K.S. evaded questions regarding his use of drugs and was similarly evasive regarding the status and future of his relationship with his live-in girlfriend.

Living conditions at Z.S.'s home worry social workers. There is no dispute that Z.S. loves the children and that they love her. However, because of her age and financial constraints, social workers doubt Z.S. can continue to provide minimal care for all four children until they are emancipated. On one visit, a social worker discovered that one of the other two children living in the home cut her foot playing with a sharp object. The day the social worker visited the home, the wound was infected so that the girl was limping. No one recognized the girl required medical treatment until the social worker's visit. Cleanliness and hygiene were a significant problem in the home.

M.S. has a well documented medical history of emotional and behavioral disturbances including: conduct disorders, attention deficit hyperactivity disorder (ADHD), fine motor coordination disorder, and a developmental writing disorder. M.S. experiences numerous problems at home, in school, and in the community including problems with noncompliance, aggression and negative peer interactions. Remarkably, M.S. does average work in school. However, this could be attributed to the fact that M.S. has a full-scale I.Q. of 118, placing him in the high-average work range of intellectual functioning.

T.S.'s history is similar. T.S., however, has academic and behavior difficulties. She displays aggressive and defiant behavior. She has low self-esteem. Doctors also diagnosed her with ADHD. Both M.S. and T.S. are on the drug Ritalin to treat their ADHD disorders.

K.S.'s own family members have noticed the effect of K.S.'s abandonment of his children. K.S.'s sister testified that M.S. stores a lot of hatred toward K.S. She felt M.S. needed a stable one-on-one relationship with a parental figure. She also testified as to her belief that M.S. had "too many bosses" resulting in confusion and disrespect for authority. Confusion regarding K.S. is also apparent in T.S. When asked by a social worker on one occasion who K.S. was, she answered, "my brother." Even Z.S., K.S.'s mother, would not give K.S. a categorical vote of confidence regarding his ability to parent the children.

## IV. Discussion of Law

■ A court may terminate parental rights if there is clear and convincing evidence the child was abandoned by the parent. Iowa Code § 232.116(1)(b) (1993). Even if the statutory requirements for termination are met, the decision to terminate must still be in the best interest of the children. *In re N.H.*, 383 N.W.2d 570, 574 (Iowa 1986); *In re D.W.K.*, 365 N.W.2d 32, 34–35 (Iowa 1985). The best interests of the child are paramount considerations in determining whether to terminate parental rights. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990); *In re N.H.*, 383 N.W.2d at 574.

■ In assessing the best interests of the child, we evaluate the child's long-range as well as immediate interests. *In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). We must consider what the future likely holds for the child if returned to his or her parents. *Id.* We gain insight into the child's prospects by reviewing evidence of the parent's past performance—for it may be indicative of the parent's future capabilities. *Id.*

■ We give primary consideration to the physical, mental and emotional condition and needs of the child. *In re J.W.D.*, 456 N.W.2d 214, 217 (Iowa 1990). The fact that potential support would be cut off by an order to terminate is an inadequate reason to alter such a decision. *See In re L.S.*, 483 N.W.2d 836, 840 (Iowa 1992).

## V. Contentions of Parties

■ The State contends the termination would benefit the children in several ways. First, it would insure that all four children in the home remain a sibling unit in their grandmother's home. Second, it would allow Z.S., who for all practical purposes has raised the children, to exercise her judgment in allowing contact between the children and their father, free from the assertion of his legal parental rights when he has not undertaken any parental responsibilities. Third, the State contends the children will benefit from some structure and consistency in their lives. Fourth, the State notes the incident of abuse resulting in the CINA proceeding coupled with K.S.'s complete abandonment of the children makes it likely that K.S.'s future parenting skills will be characterized by similar abuse and neglect. Finally, in the event living conditions with Z.S. were to deteriorate to an unacceptable level, the children could be more readily placed into adoptive homes as a sibling unit.

K.S. counters that the termination of his parental rights will not benefit the children, noting that the children affectionately refer to him as "dad," and cry when he leaves. He contends he has demonstrated an interest in their education and has provided what he could, when he could. Finally, he argues that the possibility of an adoption does not support a finding that termination is in the best interests of the children.

## VI. Analysis

It is apparent from the record that T.S. and M.S. need stability in their home environment. They are confused and angry children. They harbor a tremendous amount of resentment toward both parents. Their relationship with their father has been confused, unstable, and occasionally violent. They have behavioral and social disorders that require medication to control.

The record clearly and convincingly shows that the dereliction of parental responsibility by K.S. has contributed to the children's suffering. K.S. wanders randomly in and out of the children's lives providing little direction or support. He would not admit paternity regarding T.S. until shortly before

trial. K.S.'s sporadic visits, four or five times per year, serve only to anger, confuse and dishearten the children. The prospect of K.S. being a financial benefit to the children, a ground upon which the court of appeals partially relied in reversing the district court, is an inadequate reason upon which to alter our decision. *See In re L.S.,* 483 N.W.2d at 840.

Moreover, K.S.'s track record does not speak well for his future parenting capabilities regarding M.S. and T.S. He shows no sign of improving his relations with his children. We recognize our court of appeals' decision holding that the mere possibility of adoption in the future is insufficient grounds for termination. *See In re J.L.W.,* 496 N.W.2d 280, 283 (Iowa App.1992). However, in the event that Z.S. is no longer able to provide the needed care for the children, an adoption could be a viable consideration.

The record discloses by clear and convincing evidence that K.S. has abandoned his children, M.S. and T.S., and that it is in their best interests to terminate this parental relationship.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**