**IN THE COURT OF APPEALS OF IOWA**

No. 14-0098
Filed April 16, 2014

**IN THE INTEREST OF**
**E.M., C.W., S.W., C.W., and S.W.,**
 **Minor Children,**

**S.M., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Polk County, Rachel E. Seymour, District Associate Judge.


 A mother appeals from a juvenile court order terminating her parental rights to five children. **AFFIRMED.**


 Thomas G. Crabb, Des Moines, for appellant.

 Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John Sarcone, County Attorney, and Jennifer Galloway, Assistant County attorney, for appellee.

 John Jellineck of Public Defender's Office, Des Moines, attorney and guardian ad litem for minor children.


 Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

The mother appeals from termination of her parental rights to five children pursuant to Iowa Code sections 232.116(1)(b), (d), (e), and (f) (2013). The mother argues the juvenile court erred in determining she failed to maintain contact with the children and in not doing a proper balancing test for the children's best interests under Iowa Code section 232.116(2). We affirm.

I.     **Background Facts and Proceedings.**

The five children at issue in this appeal are E.M. (born 2002), C.W. (born 2005), C.W. (born 2006), S.W. (born 2007), and S.W (born 2007). In August 2012, the family came to the attention of the department of human services because the mother's paramour had punched E.M. in the chest. At the time, only the two oldest children were living with the mother and paramour. The other three children lived with their biological father in Missouri. When interviewed, the children reported that the paramour routinely punched them as a form of punishment, that the mother and the paramour smoked marijuana while the children were present, and that they were afraid of the paramour. A search of the family's residence revealed illegal substances and drug paraphernalia. The mother had a history of substance abuse and being in physically abusive relationships. The juvenile court ordered a temporary removal in August 2012 and confirmed the removal in September 2012. In the removal order the court found the mother was aware of the paramour's physical abuse of the children but continued to allow him to care for them. The mother admitted to smoking marijuana. The mother also was aware the paramour was selling drugs in the

State of Missouri. The children had been with her and the paramour in her car when someone drove up and shot a gun at the car. They had fled together to Iowa as a result of this incident. The court also found the children had been removed in 2009 by the State of Missouri due to a lack of supervision. The court ordered the mother to obtain substance abuse treatment and a mental health evaluation. In October, the mother retrieved her three younger children from their father in Missouri and brought them to Iowa. The court ordered these children removed on October 17 because of the risk of physical abuse and neglect that remained due to the mother's substance abuse issues and the fact that she continued her relationship with the paramour.

The court adjudicated all five children in need of assistance on October 25. At the adjudication hearing, the mother stated she was going to start parenting and domestic violence classes in the near future. The mother had obtained a substance abuse evaluation but had not discussed with the evaluator the substance abuse issues surrounding the removal of the children. The court ordered the mother to obtain employment and comply with drug testing. It also ordered her to attend individual therapy to address her domestic violence issues.

On December 12, 2012, the court held a dispositional hearing. Following the hearing, the court found there were significant issues the mother needed to overcome to reunite with the children. The mother failed to acknowledge any need for services. The mother had been unsuccessfully discharged from substance abuse treatment because she denied having a substance abuse problem. DHS reported concerns with the mother's poor parenting skills and

inability to manage the children. The Family Safety, Risk, and Permanency (FSRP) worker testified the mother did not show affection for the children, was preoccupied with the youngest child, and spent time during the visitation talking on the phone. The court ordered the mother to obtain appropriate housing and employment.

In January 2013, the mother moved to Missouri.[1] She did not return to Iowa to see the children again until mid-September, over nine months later. The mother maintained she made frequent phone calls to the children, but DHS characterized the calls as more sporadic. At a permanency hearing on September 4, the juvenile court ordered the State to file a petition for termination.

At the termination hearing, in December 2013, the DHS worker testified the children were placed in separate homes because their behavioral problems made them too difficult to manage when placed together. All five children were seeing therapists and taking medication. The children's behavioral problems include food hoarding and drinking water from toilets, behaviors that are a result of trauma they suffered while in the mother's care. The DHS worker also testified the mother had not been in contact with the children's therapists and therefore could not assist the children in implementing the therapies, which could be detrimental to their therapeutic progress.

Upon her return to Iowa in mid-September 2013, DHS resumed the mother's one-hour-per-week supervised visitation. Because of the length of time

---

[1] Various explanations were offered at the termination hearing to explain the mother's move to Missouri. The mother testified she went to care for her ill mother and decided to remain to engage in services with the State of Missouri. The State suggested the mother moved to further an intimate relationship with a man in Missouri.

the mother had been out of in-person contact and because of the children's behavioral issues, DHS was concerned about the impact resuming visitation would have on the children. The DHS worker discussed with the mother beforehand the importance of being consistent with the new visitation schedule and that the children had become upset when the mother did not come to visitation.[2] The mother indicated she understood and would remain consistent. Nonetheless, of the twelve visits scheduled from mid-September to the termination hearing in December, the mother attended five. The mother blamed missing the visits on her work schedule and illnesses.

The mother testified she was diagnosed with posttraumatic stress disorder and serious depression but admitted she sought no treatment. She testified she was involved in substance abuse treatment in Missouri but provided no documentation reflecting this or her progress. With regard to domestic violence education, the mother testified she watched one webinar. Although the DHS worker had regularly offered assistance in making appointments for therapy and treatment, the mother had done little to follow up and attend.

At the termination hearing, the mother asked for six months to show improvement. The DHS worker testified the mother needed to be consistent with visitation, keep in contact with the children's therapists and teachers, work to implement their therapies, attend and progress in her own therapy, accept accountability for her actions, and demonstrate initiative in engaging with services. The DHS worker testified she had not seen enough progress in these

---

[2] Throughout the new visitation schedule, the DHS did not inform the children when there was going to be a visit because the mother had been so inconsistent in the past.

areas since the mother reestablished contact to recommend a six month extension. The guardian ad litem also recommended immediate termination as being in the children's best interest. The juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(b), (d), (e), and (f). The mother appeals.[3]

## II.    Standard of Review.

We review a juvenile court order terminating parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *Id.* Our primary consideration is the best interests of the child. *Id.* at 776.

## III.    Analysis.

### A.    Statutory Grounds.

Although the juvenile court terminated her parental rights on four separate statutory grounds, the mother challenges only one of the four grounds on her appeal. When the juvenile court terminates parental rights on more than one statutory ground, we need only find termination proper under one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The mother's failure to raise the remaining three statutory grounds for termination waives any claim of error related to those grounds. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the

---

[3] The juvenile court also terminated the parental rights of the children's putative and alleged fathers. None of those fathers' rights are at issue in this appeal.

appellant for reversal on appeal"). Therefore, we affirm the juvenile court's order terminating the mother's parental rights pursuant to the other three grounds.

**B.      Best Interests.**

The mother also contends the district court failed to do a proper balancing test for best interests under Iowa Code section 232.116(2). Termination of parental rights follows a three-step analysis. *In re P.L.*, 788 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a statutory ground for termination exists under Iowa Code section 232.116(1). *Id.* Second, the court must give consideration to the child's best interests, including the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child. *See* Iowa Code § 232.116(2). Finally, the court need not terminate parental rights if it finds any of the statutory exceptions under Iowa Code section 232.116(3) apply.

The mother argues the children's best interests are served by granting her a six-month extension or returning the children to her. The juvenile court found

> Having found grounds for termination, the Court turns its attention to the issue of whether termination is in the best interest of the child. The Court's primary concern is the best interest of the child. *In re T.B. and T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). (Citation omitted). In assessing the best interests of the child, the Court looks at the long term as well as immediate interests of the child. *In re M.S. and T.S.*, 519 N.W.2d 398, 400 (Iowa 1994). The child's *safety* is a primary consideration. Unfortunately, the safety concerns that led to removal continue to exist today. The parents' lack of participation in services show an inability or unwillingness to make necessary changes to have the child placed in their care. The child's future can be gleaned from evidence of the parent's past performance and motivations. *In re T.B.*, 604 N.W. 2d 660, 662 (Iowa 2000).
>      Further, the children need a long-term commitment from a parent to be appropriately *nurturing, supportive of their growth and*

*development*, and who can meet their *physical, mental, emotional and safety needs.* No parent has demonstrated they are willing or able to fulfill this parental role.

(Emphasis added.) The mother has a long history of violent relationships. She has not addressed these or her substance abuse issues in a meaningful way. The children have been out of her care for over a year. The juvenile court found the mother abandoned the children and did not see them for nine months when she moved to Missouri. When she did resume in-person contact, she attended only five of twelve visitations, despite being told how important consistency was for the children. The mother has not engaged in trying to understand the children's therapy at all, despite the trauma they suffered in her care. The evidence is clear that with respect to their safety, their long-term nurturing and growth, and their physical, mental, and emotional condition, the mother is unable or unwilling to meet the children's needs. Therefore, on our de novo review, we agree with the juvenile court that the best interests of the children are served by terminating the mother's parental rights.

## IV. Conclusion.

The mother challenges only one of four statutory grounds for termination. As there need be only one valid ground for termination, we affirm based on the other three grounds. We also find the juvenile court properly found termination was in the children's best interests. Therefore, on our de novo review, we affirm.

**AFFIRMED.**