## IN THE COURT OF APPEALS OF IOWA

No. 14-2131
Filed February 25, 2015

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**K.F., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, William Price, District Associate Judge.

A mother appeals the termination of her parental rights to her son, born in 2012. **AFFIRMED.**

Emily K. Tisinger of Springer & Laughlin Law Offices, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Kevin Brownell, Assistant County Attorney, for appellee State.

Stephie Tran, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

A mother appeals the termination of her parental rights to her son, born in 2012. She (1) challenges the grounds for termination cited by the juvenile court and (2) contends termination was not in the child's best interests.

**I.** The juvenile court terminated the mother's parental rights pursuant to two statutory provisions. We find it necessary to address only one: whether the child could be returned to the mother's custody. *See* Iowa Code § 232.116(1)(h) (2013); *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999) (we may affirm if we find clear and convincing evidence to support any of the grounds cited by the juvenile court).

Our de novo review of the record reveals the following facts. The Department of Human Services became involved with the family in January 2013 based on the mother's mental health and the child's exposure to domestic violence. The child was adjudicated in need of assistance but remained with his mother.

Two months after the adjudication, the juvenile court removed the child from the mother's care and placed him with the mother's aunt and uncle. The transfer was based on the mother's failure to cooperate with mental health services, her defiance of an admonishment to keep the child away from the child's father, her decision to take the child to her new boyfriend's house or leave the child with relatives while she spent nights with the boyfriend, and a claimed assault on her grandmother. The mother stipulated to the need for removal. The child remained with the aunt and uncle through the balance of the proceedings.

The mother visited the child regularly and, according to a department social worker, "demonstrat[ed] positive parenting skills." Several months after the child's removal, she also began attending individual therapy sessions. Despite this progress, the department reported she was "distracted from benefitting from services tailored to reunify her with" the child.

The mother's failure to commit to reunification services other than visits continued into the fall of 2013. The department changed course and found an inability "to provide minimally adequate parenting." The State petitioned to terminate her parental rights.

In early 2014, the State dismissed the petition as to the mother. Two months later, the mother tested positive for marijuana in her system, a new factor raising concerns about the mother's reunification prospects.[1] The mother was also arrested for hitting her grandfather—conduct she attempted to explain rather than deny. She was charged with domestic assault, a charge that was pending at the time of the termination hearing.

The department concluded the mother was not "able to make the necessary behavior changes that were anticipated when the court ordered that she be allowed additional time to reunify." The State again petitioned to terminate her parental rights.

At the termination hearing, the State initially elicited testimony from an expert with the federally-recognized Indian tribe in which the child was enrolled. The expert testified he would have the same safety and welfare concerns as the

---

[1] The department did not require regular drug testing during the first year of the proceedings because drug use did not appear to be a concern.

department "if this were a hearing within our own tribal system." He further testified tribal services were not available in Iowa but agreed the tribe could provide no "traditional and customary support and resolution actions or services" other than those provided by the department.

A department social worker testified the mother was participating in services, including therapy, visits, and a young woman's group. He nonetheless recommended termination of her parental rights based on her sometimes strained relationship with the child's caregivers.

We are not persuaded the mother's relationship with her aunt and uncle was grounds to terminate the mother's parental rights; both testified in support of the mother and stated they were fully behind her efforts to reunify with the child. However, termination was warranted based on the risk of harm to the child if returned to the mother's full-time care. The mother had yet to gain sufficient insight into her own behaviors to be able to control her aggression. She also showed a level of immaturity in her conduct that jeopardized the safety of her child. For these reasons, we conclude the child could not be returned to her custody. *See* Iowa Code § 232.116(1)(h)(4).

**II.** Termination must also be in the child's best interests. Iowa Code § 232.116(2); *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994). As noted, the mother shared a strong bond with the child. *See* Iowa Code § 232.116(3)(c). The child was also placed with supportive relatives. *See* Iowa Code § 232.116(3)(a). These exceptions to termination might have carried the day but for the setbacks described above. Those setbacks after the statutory deadlines for pursuit of termination weakened the mother's case for a continued legal

relationship with the child. As the juvenile court stated, the child was two years old and had "been in limbo with respect to whether he [could be] reunified with his mother for over half of his life" and "[e]fforts to get [the mother] in a position to have this child in [her] custody have been exhausted." Under these circumstances, we agree termination of the mother's parental rights to this child was in the child's best interests. *See In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) ("A child should not be forced to endlessly await the maturity of a natural parent.").

**AFFIRMED.**