# IN THE COURT OF APPEALS OF IOWA

No. 18-0875
Filed December 5, 2018

**IN THE INTEREST OF M.C., A.M., L.M., and A.M.,**
**Minor Children,**

**A.M., Father of A.M., L.M., and A.M.,**
      Appellant,

**A.C., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Washington County, Daniel Kitchen, District Associate Judge.

A mother and father challenge an order terminating their rights in their children. **AFFIRMED ON BOTH APPEALS.**

Kathryn J. Salazar of Schlegel & Salazar, L.L.P., Washington, for appellant father.

Jeffrey L. Powell of Powell and McCullough, PLC, Coralville, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Katie Mitchell of Mitchell Law Office, PLC, Washington, guardian ad litem for minor children.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

Ambrashia and Anthony each appeal from an order terminating their respective parental rights in three of their children, A.M. (age 3), L.M. (age 2), and A.M. (age 1), pursuant to Iowa Code section 232.116(1)(h) (2018). Ambrashia also appeals the termination of her rights in another child, M.C. (age 6), pursuant to Iowa Code section 232.116(1)(f). Anthony challenges the sufficiency of the evidence supporting the statutory grounds authorizing termination of his parental rights. He also claims the Iowa Department of Human Services ("IDHS") did not make reasonable efforts to facilitate reunification of the family. Both parents challenge the juvenile court's denial of their requests for an additional six months' time to work toward reunification. Both parents also contend termination of their rights was not in the best interests of the children.

I.

IDHS has been involved with this family since August 2014. At that time, IDHS initiated a child-in-need-of-assistance proceeding. That proceeding concluded in October 2016.

In November 2016, Ambrashia and Anthony's eighteen-month-old child died in the home. The certificate of death listed an "undetermined cause of death with malnutrition and associated neglect" and classified the manner of death as a homicide. Subsequently, the juvenile court entered a temporary removal order for three of the children involved in this case, M.C., A.M., and L.M. The children were placed in foster care.

Starting in February 2017, both parents participated in supervised visits with the children. Family Safety, Risk, and Permanency Services ("FSRP") specialist

Michelle Schuerer supervised these visits. Ambrashia attended the majority of the visits, but Anthony missed most visits. Most of Anthony's absences were due to a conflict between his work schedule and the visitation schedule.

The parents never progressed past supervised visits due to Schuerer's concerns for the health and safety of the children. Schuerer had concerns regarding the condition of the parents' home. The house was cluttered and unsanitary. Dog feces, urine, and vomit were on the floor throughout the house. Dog feces was found on a toddler's bed. Trash and rotting food products were about the house. The house was infested with gnats and flies. Cleaning products and electrical cords were left within reach of the children. Storage totes were stacked in the dining room. A wax warmer was left on the floor. On one occasion, L.M. burned himself on the wax warmer. For the most part, the parents did not provide adequate meals for the children.

In March 2017, Ambrashia gave birth to A.M., the youngest child involved in this termination proceeding. The child's cord blood tested positive for THC. The child was immediately removed from the parents' care and placed in foster care with his siblings. In March and April of 2017, M.C., A.M., L.M., and A.M. were each adjudicated children in need of assistance.

Ambrashia and Anthony were arrested in October 2017 and charged with child endangerment resulting in death. They were both detained pretrial. While in pretrial detention, both parents continued to participate in visitation with their children. At the time of the termination hearing, both parents were still being detained pending the criminal trial and were unable to resume care of the children.

Both parents attended the termination hearing, but neither parent offered testimony or evidence at the hearing.

II.

We review termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). However, "we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) termination of parental rights is in the best interest of the child. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

III.

A.

We first address Anthony's contention the State failed to prove by clear and convincing evidence the children could not be returned to his care at the time of trial as required by Iowa Code section 232.116(1)(f)(4) and (h)(4). The challenge is without merit.

As a preliminary matter, the children could not have been returned to Anthony's care at the time of trial because Anthony was detained pending criminal trial. *See In re A.A.*, No. 10-0848, 2010 WL 4905884, at *3 (Iowa Ct. App. Nov. 24, 2010) ("At the time of trial, neither Kim nor Phillip was available to parent. Kim

remained incarcerated with a tentative discharge date of July 2015. Phillip was in a residential facility and facing a September 17, 2009 revocation proceeding.").

Even if Anthony had not been detained, there is clear and convincing evidence the children could not have been returned to his care without exposure to an appreciable risk of adjudicatory harm. As noted above, one of Anthony's children died due to malnutrition and neglect. Anthony has been charged with child endangerment as a result. Despite the death of the child, Anthony continued to neglect the well-being and health of his other children. His home was unsanitary and unsafe. The children were not adequately nourished. While Anthony blames Ambrashia for much of this, it does not absolve him of the responsibility to provide for the well-being of his children. As a legal matter, Anthony is charged with the responsibility of providing for the safety of his children. He failed to meet this most basic obligation.

## B.

We next address Anthony's claim IDHS did not make reasonable efforts to reunify the children with him. If IDHS receives custody of a child, it must "make every reasonable effort to return the child to the child's home." Iowa Code § 232.102(9); *accord In re T.B.*, No. 18-1139, 2018 WL 4361181, at *2 (Iowa Ct. App. Sept. 12, 2018). Although a parent's imprisonment does not absolve IDHS of the duty to attempt reunification, "a parent's imprisonment may create difficulties in providing reunification services." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). We determine whether IDHS's efforts were reasonable by considering the particular facts and circumstances of the case. *See In re M.G.*, No. 18-0650, 2018 WL 3912192, at *2 (Iowa Ct. App. Aug. 15, 2018); *S.J.*, 620 N.W.2d at 525.

Anthony argues IDHS did not provide him with sufficient visitation. This argument is unfounded. Prior to Anthony being arrested, the parents were provided with an average of three visits per week. Anthony missed most of the visits. The visits did not progress beyond supervised due to Anthony and Ambrashia's failure to remediate the conditions of the home and provide adequate food for the children, among other things. After Anthony's arrest, his visitation was limited. He received weekly visitation, but the visitations were over the phone and a video screen rather than in person. He argues IDHS should have provided in-person visits. IDHS did inquire with the jail whether in-person visits were possible. The jail refused to accommodate such visits, finding that they were against policy. There was no more IDHS could provide in terms of visitation.

In addition to visitation services, the department provided a host of other services. *See In re J.C.*, No. 17-0750, 2017 WL 3283395, at *4 (Iowa Ct. App. Aug. 2, 2017) ("The adjustment to Julie's visitation schedule in response to her changed circumstances does not establish the State failed to make reasonable efforts. In addition to appropriate visitation, IDHS offered Julie a variety of other services."); *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("Visitation, however, cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification."). These services included IDHS case management services; child protective services; case-plan development; collection of social-history information; monitoring services; face-to-face contact with the clients and the family; transportation; financial assistance; family team meetings; staffings; court participation; preparation of reports; implementation of FSRP services; Parent-Partner referrals; 24/7 Dad referrals; a

home study on the paternal grandmother; drug testing; psychological evaluations; and substance-abuse evaluations. It was not the lack of services that prevented reunification of the family, it was Anthony's failure to fully engage in services and his criminal conduct resulting in arrest. IDHS made reasonable efforts to facilitate reunification under the circumstances presented.

C.

At the time of the termination hearing, the juvenile court may defer termination if there exist "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). Ambrashia and Anthony each claim the juvenile court erred in denying their request for an additional six months' time to work toward reunification. At the time of the termination hearing, Anthony and Ambrashia were detained on charges of child endangerment resulting in death. Anthony argues his trial date was one month after the termination hearing and an additional six months' time would have given him time to reunite with his children.

We find the juvenile court did not err in denying the request. There are no specific factors showing the need for removal would not continue to exist if the parents were granted additional time to work toward reunification. First, it is possible neither Ambrashia nor Anthony would have been released from custody if given additional time. *See In re K.K.*, No. 16-1089, 2016 WL 4801397, at \*4 (Iowa Ct. App. Sept. 14, 2016) (denying an additional six months for reunification when "[a] date certain for the father's release from incarceration is not clear"); *In*

*re J.J.*, No. 07-2111, 2008 WL 239453, at *1 (Iowa Ct. App. Jan. 30, 2008) (finding denial of a request for an additional six months was appropriate when mother was incarcerated and there was no guarantee she would be released during the additional period of time).

Second, even if Ambrashia and Anthony would have been released during the six-month window, it is unlikely they would have been able to provide a suitable home for the children. *See K.K.*, 2016 WL 4801397, at *4 ("[W]e do not know what [the father's] employment status will be or if he will have an appropriate home upon release from incarceration."). At the time of the termination hearing, neither parent had housing, transportation, or employment. *See In re K.H.*, No. 16-0113, 2016 WL 1703095, at *2 (Iowa Ct. App. Apr. 27, 2016) (affirming termination where "the father was unable [to] maintain safe and stable housing, lacked transportation, and was unemployed at the time of the termination").

Third, prior to arrest, and after years of intervention and services, the parents were not able to meet the basic needs of the children; there is no reason to believe an additional six months would have resolved what years of services did not. IDHS recognized "a pattern of instability, [unsanitary] conditions of the home, substance abuse, mental health concerns, and relationship issues." We give weight "to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997); *accord In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *3 (Iowa Ct. App. Oct. 10, 2018) (denying an extra six months for reunification when mother's past conduct was "indicative of her likely future conduct").

D.

We next address the parents' claims that termination of their rights was not in the best interests of the children. "In assessing the best interests of the child, we evaluate the child's long-range as well as immediate interests." *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994); *accord In re J.G.*, No. 04-0510, 2004 WL 1161431, at *2 (Iowa Ct. App. May 26, 2004). The court "give[s] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

Ambrashia and Anthony have been unable to provide a safe environment for their children. *See C.K.*, 558 N.W.2d at 174 (finding the unsanitary condition of parents' home supported termination of their rights); *In re V.K.*, No. 10-0485, 2010 WL 1881864, at *5 (Iowa Ct. App. May 12, 2010) ("The inability to maintain a sanitary home without outside assistance clearly shows that D.B. is unable to provide the children with a safe environment."). One of their children died while in their care. Despite being offered a host of services by IDHS, Ambrashia and Anthony failed to progress to semi-supervised visits. *See In re M.W.*, 876 N.W.2d 212, 223-24 (Iowa 2016) (finding that failure "to progress to either semi-supervised or unsupervised" visits militated in favor of termination of mother's rights); *In re B.L.-F.*, No. 11-0558, 2011 WL 4953038, at *1 (Iowa Ct. App. Oct. 19, 2011) (affirming termination of father's rights when he "never managed to progress to semi-supervised or unsupervised visitation"). Most concerning, at the time of the termination, both parents were awaiting trial for child endangerment resulting in

the death of a child. *See In re S.R.*, No. 02-0703, 2002 WL 1758337, at *2 (Iowa Ct. App. July 31, 2002) (finding mother's guilty plea to child endangerment supported the termination of her parental rights). There is clear and convincing evidence that return of the children to their parents would not be in the children's best interests.

IV.

We find no merit to Ambrashia or Anthony's challenges. Therefore, we affirm the termination of their respective parental rights.

**AFFIRMED ON BOTH APPEALS.**