# IN THE COURT OF APPEALS OF IOWA

No. 21-1235
Filed November 23, 2021

**IN THE INTEREST OF L.L.,**
**Minor Child,**

**D.L., Mother,**
       Appellant.
_____

       Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


       A mother appeals the termination of her parental rights.  **AFFIRMED.**


       Kaitlyn C. DiMaria of DiMaria Law, PLLC, West Des Moines, for appellant

mother.

       Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

       Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor

child.


       Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

The parental rights of the mother of this two-year-old child were terminated under Iowa Code section 232.116(1)(e) and (g) (2021).[1] The mother appeals, asserting termination was not in the child's best interests.[2] Because termination and adoption will best provide for the child's long-term nurturing and growth and will foster the physical, mental, and emotional condition and needs of the child, we affirm.

L.L. was born in September 2019. In December, the department of human services (DHS) began providing voluntary services to the mother and child after a child-abuse assessment was founded due to the mother's ongoing methamphetamine use while being the child's sole caregiver.

In December 2020, L.L. was formally removed from parental care, adjudicated a child in need of assistance (CINA), and placed with "fictive kin."[3] The mother participated in mental-health and substance-abuse programing but

---

[1] Section 232.116(1)(g) allows the juvenile court to terminate parental rights if the court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

[2] The court recently received a letter from the mother. We do not consider the letter because it is not part of the appellate record. *See* Iowa R. App. P. 6.801 (defining the "record on appeal").

[3] The child was placed in the care of the purported father's cousin. Paternity testing later determined he was not the biological father, but L.L. remains in that placement. The rights of L.L.'s biological father are not at issue here.

continued to use and to test positive for methamphetamine. Just three weeks before the August 2, 2021 termination hearing, the mother entered into inpatient treatment, where she tested positive for methamphetamine, heroine, and fentanyl. She was transferred to a hospital for several days due to the severity of her withdrawal symptoms before returning to the treatment program.

This is not the mother's first involvement with DHS and juvenile court. Her first founded child-abuse assessment was in March 2009; she was using methamphetamine in the presence of her child and was also using other drugs. The mother's rights to that child were terminated in December 2009. The mother gave birth to a second child in July 2015 whose umbilical cord tested positive for methamphetamine and amphetamine, resulting in a second founded child-abuse assessment. In September 2016 the mother was found to have been using methamphetamine while caring for the child. Her parental rights to the child were terminated in August 2018 due to her inability to address her mental-health issues or achieve long-term sobriety and stability.[4]

---

[4] The court in the 2018 termination ruling found grounds to terminate under Iowa Code section 232.116(1)(h) and (*l*) (2018). The court considered whether the mother's bond with the child provided a reason not terminate and stated:

> Despite the mother having . . . made progress at times, the court cannot find the child can be returned home when after the receipt of a number of services, the mother is in no better position to care for her child than when the initial removal occurred. The mother is not in a place yet with her sobriety that this child's safety can be guaranteed.
>
> . . . .
>
> Given this record and despite the abovementioned qualifying exceptions, this court does not find that an exercise of its discretion is warranted. Specifically, the mother's long substance abuse history, coupled with her unwillingness or inability to adequately address her substance abuse and mental health issues, after (1) a prior termination of her parental rights; (2) a number of residential

Unfortunately, the mother continues to struggle with substance abuse and mental-health issues despite another year and a half of DHS services and involvement.  A July 27, 2021 report from the mother's clinical therapist notes diagnoses of stimulant use disorder and major depressive disorder and reports the mother was attending weekly therapy sessions.  The therapist reports the mother's therapy goals include "addressing mental health symptoms that relate to her substance abuse, identifying healthy coping mechanisms, setting boundaries in her unhealthy relationships and taking appropriate steps to attain custody of her daughter," all of which "are still in progress."  The therapist recommended the mother complete her inpatient treatment program to "be better able to address mental health concerns."

The DHS social worker supervising the mother's case opined the child could not be returned to the mother safely:

> Due to her history, it's a high probability that she will—she can only maintain her sobriety if she's in a controlled environment.  That's what the history has shown, so once she leaves a controlled environment, history has shown that she goes back to using drugs.  She's a—she's a highly functioning addict.  She is able to work and hold a job, and for all intents and purposes, you know, she will probably return to that lifestyle since she's been successful at it before.

and outpatient treatments; (3) weekly court involvement and oversight and accessibility of services provided by Recovery Court; (4) length of time the child has been out of her care; (5) her continued illegal substance use, most notably, a few weeks prior to the termination hearing; (6) mother's denial and ability to camouflage use; (7) age of the child; and (8) the child's need for permanency do not lead this court to find by clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship.

The family support specialist who supervised visits testified she had no concerns about the mother's care during visits and observed a close bond between parent and child. She was concerned, however, about the mother's ability to follow through with her treatment plan after the mother told her "that today if she does lose her rights, she is going to leave the treatment facility and get high."

The juvenile court terminated the mother's parental rights

The mother does not contest grounds for termination exist pursuant to Iowa Code section 232.116(1)(g) (2021).[5] However, she does contend termination is not in the child's best interests and asserts "her need to continue services for a longer duration should not have been the determining factor in the termination of her parental rights, as she showed great willingness to change and sought out an in-patient facility that L.L. would be able to reside at with her."

> Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis. First, we must determine whether any ground for termination under section 232.116(1) has been established. If so, we next determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. If we conclude section 232.116(2) supports termination, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

In re A.B., 957 N.W.2d 280, 294 (Iowa 2021) (edited for readability). Here, the mother contests only the second step and, therefore, we limit our discussion to that step. See In re P.L., 778 N.W.2d 33, 40 (Iowa 2010).

---

[5] The mother does contest termination under section 232.116(1)(e) (failing to maintain significant and meaningful contact with the child during the previous six consecutive months). Because we find clear and convincing evidence supports termination under section 232.116(1)(g), we need not address the alternative ground. In re T.S., 868 N.W.2d 425, 434 (Iowa Ct. App. 2015) ("When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm.").

The mother asserts there has been a "rush to terminate" her parental rights. The record shows otherwise. DHS began working with the mother in December 2019. Voluntary services were not sufficient, and the mother's continued drug use lead to a formal removal of the child from her custody in December 2020. Yet the mother testified her date of sobriety was July 12, 2021—less than three weeks from the date of the termination hearing. This is eerily similar to the circumstances noted by the juvenile court in the 2018 termination ruling. *See In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994) ("We gain insight into the child's prospects by reviewing evidence of the parent's past performance—for it may be indicative of the parent's future capabilities.").

In the instant case, the juvenile court wrote:

> The mother testified that she previously did treatment while in prison during her prior termination in 2009 or 2010, and that she did inpatient treatment . . . in 2018 prior to her discharge for "maximum benefits" during that time. The mother believes that doing treatment in [another town] and relocating to [another town] will lead to her being successful at this attempt at treatment. The mother testified her current treatment plan will be between [thirty] and [ninety] days. The mother admits that methamphetamine was the main issue in her 2018 termination with [J.] and earlier in 2009 or 2010 with [M.] Importantly, the mother was asked if she would trust someone to babysit a [twenty-three]-month-old child if they had used methamphetamine the night before and she answered "no" but was unable to express why not. The clear answer is that it is a safety concern. The mother recognizes, even if she does not want to say so, that [L.L.] would not be safe in her care.

When we consider whether terminating parental rights would be in the child's best interests, we "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also bear in mind that "[i]t is well-settled law that we cannot

deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

The mother's July 2021 treatment goals were listed as wanting to have her daughter placed with her and recognizing that in order to do so she needed to "ask what steps I need to take in order to have my daughter back with me so I can *begin setting goals* to help me achieve this. [Date Started: 07/22/2021, Target Date: 09/16/2021]." The mother was not any closer to resuming custody of L.L. than she was at the beginning of the case.[6]

The child, on the other hand, was doing well in placement. The family with whom the child is placed have expressed the desire to adopt. *See In re D.W.,* 791 N.W.2d 703, 709 (2010) (citing the child's preadoptive placement as a factor favoring termination under section 232.116(2)).

We agree with the juvenile court that termination of the mother's parental rights will best provide for the child's need for permanency and stability. We therefore affirm.

**AFFIRMED.**

---

[6] On appeal, the mother contends the State did not make reasonable efforts to reunify her with her child. The mother testified it was DHS's failure to provide enough visitation that resulted in her not having her child in her care. But she acknowledged having never asked the court for additional services. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding. . . . [V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge." (citations omitted)).