**IN THE COURT OF APPEALS OF IOWA**

No. 25-0292
Filed June 18, 2025

**IN THE INTEREST OF N.H.,**
**Minor Child,**

**J.H., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.


　　A father appeals the termination of his parental rights.　**AFFIRMED.**


　　Zachary C. Priebe of Jeff Carter Law Offices, PC, Des Moines, for appellant father.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Shannon Wallace, Des Moines, attorney and guardian ad litem for minor child.


　　Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

A father, James, appeals the juvenile court order terminating his parental rights to his son, N.H., born in 2023. He challenges the statutory grounds for termination and contends that the juvenile court should have returned N.H. to his custody or granted his request for a six-month extension to achieve reunification. Alternatively, he claims that it would be in N.H.'s best interests to establish a guardianship rather than terminating parental rights. After carefully considering the record, we affirm the termination order.[1]

## I.      Facts and Prior Proceedings

N.H. came to the attention of the Iowa Department of Health and Human Services in February 2024 after being treated for a skull fracture at Blank Children's Hospital. He was nine months old at that time. The treating physician reported to the department and police that the child's injury was likely caused by nonaccidental trauma. Department workers and police detectives determined that N.H. was in his mother's care when he was injured. They also discovered video of the mother hitting, kicking, and grabbing the infant. The State charged the mother with felony child endangerment.[2] In late February, the juvenile court ordered N.H.'s removal from parental custody. The department placed him with his maternal aunt, where he has remained since. The court adjudicated N.H. as a child in need of assistance (CINA) in April 2024.

---

[1] Our review is de novo. *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024). We examine the entire record, finding our own facts and adjudicating rights anew on issues properly before us. *Id.* But we respect the juvenile court's factual findings, especially on credibility issues. *Id.*

[2] The mother pleaded guilty but denied injuring N.H. when she testified at the termination hearing. She is serving a seven-year prison sentence.

Paternity testing confirmed that James is N.H.'s father. The department offered James weekly supervised visits with N.H. at the beginning of the CINA case. He ended at least one visit early, cancelled several others, and did not bring supplies for N.H. to the visits he attended. The department referred him to SafeCare services, but he was discharged in May 2024 for noncompliance. The department also asked him to provide drug screens in May and July 2024, but he did not comply with those requests.[3]

Meanwhile, James was arrested for possession of methamphetamine in June 2024. Then in July, he had an active arrest warrant for felony domestic abuse assault.[4] After learning of that warrant, the department suspended James's visits with N.H. The department could not locate James from July 2024 until his arrest in October. James remained in jail until January 2025, when he pleaded guilty to the domestic abuse assault and the court placed him on probation. After his release from jail, he did not contact the department to request visits with N.H. until a few days before the termination hearing. The department denied his request.[5]

The State petitioned to terminate parental rights. James and the mother testified at the termination hearing. James explained that his relationship with the mother ended while she was pregnant with N.H. When asked about his history of substance use, he admitted that he started using marijuana during high school and methamphetamine in 2018. According to his testimony, he "quit using daily" when

---

[3] The department noted in its termination report to the court that those "missed drug screens will be considered positive."

[4] The victim of that assault reported to police that James strangled her until she lost consciousness.

[5] James has not seen N.H. since July 2024.

N.H. was born but "relapsed and started using" again several times per day after N.H.'s removal. He acknowledged that the department offered him resources for a substance-use evaluation, but he neither had that evaluation nor participated in substance-use treatment. He completed a mental-health evaluation and received medication for depression, but he had not started recommended therapy. Nor had he started the Iowa Domestic Abuse Program—a condition of his probation.

James also testified that he lived with his father's ex-girlfriend in her trailer. She paid for rent, utilities, and groceries. He did not have a job or transportation of his own. But he said he planned to look for employment and save to regain his driver's license so that he could support himself. He believed it "could take up to six months to a year" to obtain his license and housing. As his bottom line, James asked the court to return N.H. to his custody or grant a six-month extension.

The department caseworker recommended termination, emphasizing that James "hasn't participated meaningfully in services or engaged meaningfully in interactions with [N.H.]." The guardian ad litem (GAL) also supported termination. She acknowledged that James was "trying" but urged that "he does not have things in place right now where he could successfully take [N.H.] or support him."

The juvenile court denied James's request for an extension and terminated N.H.'s legal relationship with both parents. Only James appeals.

## II. Analysis

The juvenile court terminated James's parental rights under Iowa Code section 232.116(1), paragraphs (b), (d), (e), and (h) (2025). James disputes those grounds for termination and asks for six more months to achieve reunification. Alternatively, he claims that establishing a guardianship rather than terminating his

parental rights would better serve N.H.'s best interests. We will address each of those claims in turn.

## A. Statutory Ground for Termination

When the juvenile court relies on more than one statutory ground for termination, we may affirm "on any ground . . . supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We rest our decision on paragraph (h).

The juvenile court could terminate parental rights on that ground if the State offered clear and convincing evidence of these elements:

> (1) [N.H.] is three years of age or younger.
> (2) [N.H.] has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) [N.H.] has been removed from the physical custody of [his] parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that [N.H.] cannot be returned to the custody of [his] parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

James contests only the fourth element—that N.H. could not be returned to his custody at the present time. We interpret "at the present time" to mean "at the time of the termination hearing." *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024). James argues that termination was improper because "the juvenile court could have safely returned the child to the father's home on the date of termination with his having obtained adequate housing." We disagree for several reasons.

First, James has not addressed his long-term substance use. *See A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). Although he

testified that he has not used illegal substances since he went to jail, he has not participated in drug testing, obtained a substance-use evaluation, or engaged in treatment. He also has not addressed his mental-health needs by engaging in recommended therapy. Nor has he completed domestic violence prevention or SafeCare programming.

Beyond that, James could not offer N.H. a stable home at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). He had been out of jail for less than one month. He did not have housing or transportation of his own or a steady source of income. And he acknowledged in his testimony that he could not "support [N.H.] solely by [himself] at this point." What's more, the department case worker and the GAL both expressed concerns about his ability to adequately care for N.H. On this record, we cannot conclude that N.H. could be safely returned to James's custody. The State proved the ground for termination under section 232.116(1)(h) by clear and convincing evidence.

**B. Delay in Permanency**

James next argues that the juvenile court should have granted his request to defer termination. To allow a parent more time to work towards reunification, the juvenile court must find that the need for removal will no longer exist at the end of a six-month extension. *See* Iowa Code § 232.104(2)(b). This record does not support a delay in permanency. James acknowledged in his testimony that it could take "up to . . . a year" for him to obtain employment, housing, and transportation of his own. And we agree with the juvenile court's assessment that based on James's "lack of contact with [N.H.], his lack of engagement with services, and his need to begin treatment and mental health services, reunification is not likely to

occur within 6 months." Finally, for the reasons detailed below, we find that a delay in permanency is not in N.H.'s best interests. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (explaining parents must not only show impediments to returning the child to their custody will be resolved in six months, but also that further delay is in the child's best interests).

### C. Best Interests

As a fallback position, James claims that it would be in N.H.'s best interests to establish a guardianship rather than terminate his parental rights. But James did not ask the juvenile court to establish a guardianship at the termination hearing. Nor does he name a potential guardian. So we cannot conclude the juvenile court should have established a guardianship. *See M.H.*, 12 N.W.3d at 162–63.

Like the juvenile court, we find that termination is in N.H.'s best interests. We give primary consideration to N.H.'s safety, to the best placement for fostering his "long-term nurturing and growth," and to his "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). We also consider N.H.'s integration into his foster family.[6] *Id.* § 232.116(2)(b).

James's unresolved substance use, mental-health needs, and domestic violence issues, along with his lack of participation in offered services and lack of consistent contact with N.H. raise concerns about N.H.'s future stability and safety in his care. *See In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994) ("We gain insight into the child's prospects by reviewing evidence of the parent's past performance—for it may be indicative of the parent's future capabilities."). On the other hand,

---

[6] N.H.'s aunt received her foster care license in December 2024. The court modified his placement status from relative placement to foster care that month.

N.H. has been in the care of his maternal aunt for over a year—a significant portion of his life.  He is doing well in her care, and she has been able to meet his needs.  She wants to adopt him.  She also has custody of N.H.'s older half-brother, who she has already adopted.  And N.H. is bonded with them.[7]  We conclude that termination of James's parental rights is in N.H.'s best interests to enable N.H.'s permanent placement in an adoptive home.  *See In re J.H.*, 952 N.W.2d 157, 173 (Iowa 2020).

     **AFFIRMED.**

---

[7] At the termination hearing, the aunt told the court that N.H. and his brother are "two peas in a pod."  She reported that N.H. is "happy, he's healthy, he's living his absolute best life."  The GAL also noted that N.H. "is bonded to placement" in concluding that "it's in [his] best interest to keep him where he is."