**IN THE COURT OF APPEALS OF IOWA**

No. 24-1241
Filed October 16, 2024

**IN THE INTEREST OF A.B. and A.B.-M.,**
**Minor Children,**

**K.H., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

A mother appeals the termination of her parental rights to two of her children. **AFFIRMED.**

Christine Frederick of Zamora, Taylor & Frederick, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Grishma Arumugam, Bettendorf, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

A mother appeals the termination of her parental rights to her one-year-old daughter, A.B., and three-year-old daughter, A.B.-M. She argues that terminating her rights was not in the children's best interests. After our independent review of the record, we reach the same conclusion as the juvenile court.[1] As that court found, termination of the mother's parental rights is the children's "best chance at long-term stability, growth, and healthy development." So, we affirm.

## I.    Facts and Prior Proceedings

The children came to the attention of the Iowa Department of Health and Human Services in January 2023, over concerns about domestic violence in the home of the mother and her paramour, Lawaun.[2] On one occasion, Lawaun punched and strangled the mother while she was holding then two-month-old A.B., causing bruising to A.B.'s abdomen and injuries to the mother. Both A.B.-M. and the mother's oldest daughter were in the home at the time; the oldest daughter witnessed the incident.[3]

Afterward, while she was at the hospital, the mother stated that "she was tired of covering up for Lawaun because he had been abusive to her in the past." Lawaun was charged with felony domestic abuse assault and child endangerment,

---

[1] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Our paramount concern is the children's best interests. *Id.* The State bears the burden to prove by clear and convincing evidence that the requirements for termination have been satisfied. *Id.* We are not bound by the juvenile court's fact findings; but we give them weight, especially in assessing witness credibility. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

[2] Lawaun was initially believed to be the father of A.B. and A.B.-M. DNA testing later revealed that he is not the father of either child. Notice was given to unknown fathers, but none came forward. Thus, only the mother is a party to this appeal.

[3] The oldest daughter is not a subject of this appeal.

and the district court issued a criminal no-contact order (NCO). Two days later, a child protective worker met with the mother at the home to develop a safety plan to keep Lawaun away from the children. But shortly after the mother signed the safety plan, the worker saw Lawaun enter the home. When the worker returned, the mother told her Lawaun wasn't there. The oldest daughter, however, told the worker that "Lawaun had just run out the back door."

Because of the department's concerns that the mother was unwilling or unable to follow the safety plan and NCO, the children were removed and placed out of the home by ex parte order at the end of January 2023. The court adjudicated them as children in need of assistance (CINA) in March 2023.

Meanwhile, Lawaun was arrested for committing domestic abuse assault against the mother again by the end of that year. The couple maintained an "off and on" relationship when Lawaun was out of jail, and the mother sought to dismiss the NCOs against him. While Lawaun was incarcerated, the mother was evicted from the home that they had shared. Despite her efforts, she has been unable to obtain her own housing since then; she currently lives with friends. She has been working part-time for the last several months and saving money. She expressed that if the children were returned to her, she would move into a motel with them.

The department has offered the mother weekly supervised visits with the children. Initially, Lawaun also attended the visits.[4] Social workers reported that the mother almost always attended her visits when Lawaun was there. She attended only half her weekly visits from late 2023 through early 2024, while

___

[4] The department discontinued Lawaun's visits after it determined that he was not the father of either child.

Lawaun was in jail. But by April 2024, "she was showing up for visits consistently." According to the workers, there have been "a couple stumbling blocks" during the visits "with what needed to be fed to [the children] because of their allergies and stuff, but she finally got that." Otherwise, her parenting skills have been "pretty good," and "she loves on" the children when she sees them. One of the workers testified that the children also love their mother.

A.B. and A.B.-M. have been living in the same foster home together since June 2023. The guardian ad litem (GAL) for the children reported that both children "appeared bonded with [their] foster family" when she visited them. A social worker also testified that the children "are doing well there and the foster parents are wanting to adopt."

Neither child has any behavioral problems. The younger child, A.B., receives physical therapy a few times per week to help her muscle development. She has "improved in her therapy" and is walking. The older child, A.B.-M., has had several seizures requiring hospitalization. She was recently diagnosed with epilepsy and put on medication after seeing a specialist at the University of Iowa Hospital. In addition, she sees a speech therapist three to four days per week.

In April 2024, the State petitioned for termination of parental rights. At the termination hearing in June, the court heard testimony from two department workers and a Families First services worker involved with the case. the mother attended the hearing but did not testify. In closing arguments, the mother's attorney told the court:

> My client has worked very hard through this to overcome a lot of barriers, to overcome a lot of negatives in her life. She has not had contact with Lawaun . . . for at least several months. She is

working on housing, but that is a barrier, and when she asked about going to a motel . . . she was advised not to do that. I think that that remains an option . . . . She would like to have her children returned to her. She feels that she is ready to have them returned to her. She has no intention of returning to a relationship with Lawaun. She . . . does continue to be employed by Subway. So we're just asking that the court deny the petition for termination.

The GAL recognized that the mother "has worked hard" and that "[t]here was obviously a bond between her and her children, and there still is." However, she also expressed concerns about the mother's progress:

> She has not fully complied with all the services, . . . we never got any psych eval done on her, I was not sure if there was anything additional based on that that could have helped her with addressing the issues. She picked her relationship over her children, which was something she was told at the very first hearing that she needs to . . . decide what she needs to do towards reunification with her children. . . .
> There was still, as a victim, services she needed to address and could have helped her to understand the impact of domestic violence or other work back to those kind of relationships.

Ultimately, the GAL recommended terminating the mother's parental rights, explaining:

> [O]verall, I think because of their young age and to give them permanency, I agree with the termination, but . . . I don't know if giving additional time to mother is going to help getting these children permanency because these children are pretty young, and she will still have other constraints besides her financial situation. So we are at the phase of termination, and she has been given a long time, so I agree with the recommendation of termination.

After the hearing, the juvenile court terminated the mother's parental rights based on Iowa Code sections 232.116(1)(d) and (h) (2024) and found that termination was in the best interests of the children. She appeals.

## II.    Analysis

In her appeal, the mother does not contest the grounds for termination.  *See* Iowa Code § 232.116(1); *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017) (noting that when a parent does not dispute those grounds, we need not discuss that step).  She also does not contend that any of the permissive exceptions for termination apply.  *See* Iowa Code § 232.116(3); *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (holding that "the parent resisting termination bears the burden to establish an exception to termination").  Instead, she argues that terminating her rights was not in the children's best interests.  So, we follow the framework in Iowa Code section 232.116(2), giving primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional conditions and needs.

In arguing best interests, the mother contends that she can provide the children with a safe and stable home, although "[s]he acknowledges that she is having problems obtaining housing."  She also urges that she has a strong bond with her children and has maintained a meaningful relationship with them by interacting "thoughtfully, fully and appropriately" during their visits.  And she states that she "has separated from the aggressor of the domestic abuse."

In its response, the State contests error preservation, asserting that the mother did not argue that termination was contrary to the children's best interests. We disagree, finding that she preserved error by asking the juvenile court to deny the petition for termination.  And we have held that the juvenile court must decide whether termination is in the children's best interests "regardless of whether the parent contests the issue."  *In re C.H.-B.*, No. 18-1246, 2018 WL 4627709, at *2,

n.2 (Iowa Ct. App. Sept. 26, 2018). The State also points out that the statutory best-interests framework does not include consideration of the parent-child bond. *See, e.g.*, *In re A.B.*, No. 23-0235, 2023 WL 3335422, at *2 (Iowa Ct. App. May 10, 2023). True, consideration of a "close relationship between the parent and children is more appropriate under step three of the analysis, when the court considers permissive factors [under section 232.116(3)] that may preclude termination." *Id.* at *2, n.4. But a strong attachment to their parent may help identify the placement best suited to meeting the children's emotional needs under section 232.116(2).

On the merits, the State emphasizes its concerns about "the pattern of domestic violence" between the mother and Lawaun and her failure to participate in domestic violence counseling. The mother's "history of going back to [Lawaun] does not bode well for providing the stability and safety that the children need and deserve," according to the State.

In assessing the best interests of the children, we must consider what the future likely holds for them if returned to their mother. "We gain insight into the child[ren]'s prospects by reviewing evidence of the parent's past performance—for it may be indicative of the parent's future capabilities." *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994), *holding modified by In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Like the State and the juvenile court, we find the mother's record of returning to her relationship with Lawaun and her lack of participation in domestic violence counseling, individual mental-health appointments, and other offered services raise concerns for the children's future stability and safety in her care.

We must also consider the children's physical, mental, and emotional conditions and needs. Both children, particularly A.B.-M., have special medical

needs. The mother has not participated in A.B.-M.'s appointments for her epilepsy diagnosis or A.B.'s physical therapy appointments.[5] She has not requested any training on how to care for the children's medical needs or contacted their doctors to discuss their conditions. She has also not consistently followed through with scheduling medical and dental appointments for the children. In its best-interests analysis, the juvenile court found that the mother "has not achieved personal stability to address [A.B.-M.]'s therapeutic and medical needs."

Moreover, we consider the integration of the children into their foster family, "whether the foster family is able and willing to permanently integrate the child[ren] into the foster family," and the "length of time the child[ren] [have] lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child[ren]." Iowa Code § 232.116(2)(b)(1). The children have now been living together with their foster family for over a year—a significant portion of their lives. They are bonded with their foster siblings and their foster parents, whom they call "Mom and Dad." Their foster parents are willing and able to adopt both children and have cared for their special medical needs without issue. And according to the GAL, the children have "appeared happy and healthy" in their care.

We don't doubt that the children share a loving bond with the mother. But on this record, we agree with the juvenile court that termination of her parental rights is the children's "best chance at long-term stability, growth, and healthy

---

[5] We note that this is partly due to the locations of the appointments and the mother's transportation difficulties. She has attended the children's medical appointments in her hometown when she had transportation.

development."   And potential adoption by their foster parents "is the best placement option to meet their physical, medical, mental, and emotional" conditions and needs.  So, we affirm the termination order.

**AFFIRMED.**